VAUGHN v. THE COMET CONSOLIDATED MINING COMPANY
ET AL.

1. ESTOPPEL.

A creditor who has consented to the transfer by his debtor of its property, or who has so acquiesced therein as to induce others to deal with the transferee under the belief that he had ratified the transaction and assented to the transfer, is estopped from afterwards asserting his claim to their prejudice.

2. EQUITY—MERGER.

The purchase of a prior charge or incumbrance upon property by one who claims the ownership in fee does not in equity necessarily merge the charge or incumbrance.

3. SAME.

The mere fact of a charge having been paid off does not decide the question whether it is extinguished. If there is no reason for keeping it alive, equity will, in the absence of any declaration of intention, destroy it ; but if there is any reason for keeping it alive, such as the existence of another incumbrance, equity will not extinguish it.

*Appeal from the District Court of Arapahoe County.*

THIS is a suit in equity by Samuel V. Vaughn against the defendants in error to set aside certain conveyances alleged to be fraudulent. The suit was originally brought on the 21st day of June, 1886, against The Comet Consolidated Mining Company, The Upper Platte Mining and Smelting Company, Henry C. Frost, J. Granville Sharp, Hugh Butler and Edwin Pike, sheriff of Park county, Colorado ; and on the 17th day of January, 1890, plaintiff filed an amended and supplemental complaint, making the other defendants in error parties.

The facts upon which the right to this relief is predicated are substantially as follows : The Upper Platte Mining and Smelting Company was in 1882 the owner of certain mining claims, a tramway, and certain mill sites and other property. On December 23, 1882, the company became indebted to appellant, James C. Hale, H. C. Frost and Richard Le Bert in the sum of $14,000, and as evidence of such indebtedness executed to these parties its promissory notes for the proportion of such indebtedness due each of them respectively ; —to appellant, two notes for $1,250 each, due in nine and fifteen months, and one for $1,000, due in twelve months after date ; and like notes to James C. Hale, who afterwards assigned the same to appellant. On June 8, 1881, the company executed a power of attorney to Hugh Butler and J. Granville Sharp, conferring upon them the full management of its property, and empowering them to sell, lease, or otherwise dispose of the same, and to execute and deliver deeds, receive and receipt for purchase money, etc.

On March 22, 1883, the company, by Butler & Sharp, at-

torneys in fact, conveyed all its property to The Comet Consolidated Mining Company for and in consideration of its entire capital stock, consisting of 90,000 shares of the par value of $10.00 each. The Comet Consolidated Mining Company was incorporated by James F. Matthews, C. L. Webb and Henry C. Frost, for the purpose of taking title to the property of The Upper Platte Mining and Smelting Company, and to provide by the sale of a portion of its stock for the payment of the indebtedness of that company, and placed in escrow 36,000 shares for that purpose. At the time of the transfer of title to The Comet Consolidated Mining Company, Matthews, Webb and Dillingham entered into an agreement to purchase this stock, and thereby furnish means for the working of the property and the payment of these debts. They paid the sum of $1,500 to Butler & Sharp, but failed to carry out their agreement any further, whereupon The Comet Consolidated Mining Company continued to work upon the property during the years 1883 and 1884, and incurred an indebtedness thereby which they had no funds to pay. This indebtedness consisted of $1,000 borrowed by the company from Hudson and $6,687.77 for labor, materials, etc. For the latter amount the company gave its note to Frost. The appellant and Hale, who were then residing in Missouri, received notice of this transfer to The Comet Consolidated Mining Company by letter from Sharp, dated March 27, 1883, which letter also contained an offer on the part of Sharp, in pursuance of a previous agreement, to assign as collateral security to appellant and to the other parties holding the notes of the company $20,000 worth of his stock in the new company. The only response to this notification appearing in the record is the statement of Sharp in a letter written by him to Le Bert April 18, 1883, to the effect that he had received a letter from Mr. Hale, worded as follows:

"I suppose nothing will be lost by waiting until I get to Colorado to change our securities. I shall be up the gulch sometime the coming spring."

Afterwards, and on May 19, 1884, the appellant commenced suit in the district court of Arapahoe county against The Upper Platte Mining and Smelting Company, upon the notes held by him, for the sum of $7,000, and caused a writ of attachment to be issued and levied upon the property in controversy; and also caused garnishee process to issue against Butler & Sharp to subject The Comet Consolidated Mining Company stock received by them in purchase of the property to the payment of his claim. On April 22, 1886, judgment was rendered for $9,162, and the attachment sustained. On November 18, 1886, The Roswell Mining Company was duly incorporated under the laws of this state.

On December 20, 1885, Hudson commenced suit by attachment in the county court of Arapahoe county against The Comet Consolidated Mining Company, and recovered judgment March 22, 1886, for the sum of $633.07, the unpaid balance loaned by him to the company. Execution was issued to the sheriff of Park county and levied upon the property in controversy, which was sold to The Roswell Mining Company thereunder on December 18, 1886; and in pursuance of said sale, on September 19, 1887, the sheriff conveyed the property to The Roswell Mining Company.

In December, 1885, Frost instituted suit and sued out a writ of attachment on his note against The Comet Consolidated Mining Company, and obtained judgment. Execution issued thereon and the property was sold in pursuance thereof on February 27, 1886, and was bought in by Frost and conveyed to him by sheriff's deed, dated November 29, 1886.

On November 29, 1886, Frost conveyed this title to Roswell P. Brown, who afterwards, and on December 6, 1886, conveyed the same to The Roswell Mining Company.

On October 28, 1887, The Comet Consolidated Mining Company executed its deed for the property in question to The Roswell Mining Company. On March 29, 1887, The Ashtabula Mining Company was duly organized, and on April 2, 1887, The Roswell Mining Company conveyed its title to the property in question to it. On December 14,

1887, The Plymouth Rock Mining and Smelting Company was duly organized, and on December 15, 1887, The Ashtabula Mining Company conveyed its title to the property in question to the latter company. On June 4, 1884, Richard Le Bert brought a suit against The Upper Platte Mining and Smelting Company upon the notes held by him, caused a writ of attachment to be issued, and on that day, and thirteen days prior to the levy of the writ of attachment by appellant, caused a levy to be made upon the property in question ; afterwards recovered judgment for the sum of $2,912.82 and costs. This judgment Le Bert assigned to Adler on the 15th of October, 1887, but for the benefit of Brown, who paid the consideration, and to whom it was assigned by Adler on that date.

On August 28, 1888, an execution was issued upon this judgment, and on October 2, 1888, the property was sold to Roswell P. Brown, who received sheriff's deed therefor October 2, 1888. On July 8, 1889, Brown conveyed this title to Welch.

The appellant alleges that the foregoing transfers were fraudulent, and made in pursuance of a conspiracy to defraud The Upper Platte Mining and Smelting Company and its stockholders of its property and cloud and incumber its title, so as to prevent legal process from attaching in favor of, and to hinder and delay and defraud, its creditors. The court below found the issues in favor of defendants and dismissed the action. To reverse this judgment Vaughn brings the case here on appeal.

Messrs. LIPSCOMB & HODGES, for appellant.

Messrs. TELLER, ORAHOOD & MORGAN and Messrs. NORRIS & HOWARD, for appellees.

MR. JUSTICE GODDARD delivered the opinion of the court.

The finding of the court below that the allegations of fraud were not sustained is amply supported by the testi-

mony.  It appears that the sale and transfer of its property
by The Upper Platte Mining and Smelting Company to The
Comet Consolidated Mining Company was made in good
faith and principally for the purpose of providing for the
payment of its indebtedness due the appellant and its other
creditors.  In and by the agreement entered into with Mat-
thews, Webb and Dillingham, provision was made for the
sale of 36,000 shares of The Comet Consolidated Mining
Company's stock for a sum ample not only to meet this in-
debtedness, but also to provide a capital to carry on the de-
velopment of the property.  The consummation of this
purpose was prevented by the failure on the part of Webb,
Matthews and Dillingham to carry out their part of the
agreement.

It further appears that The Comet Consolidated Mining
Company, in good faith, attempted to carry out the agree-
ment on its part, and, after the default of Matthews, Webb
and Dillingham, continued working the property and in-
curred an indebtedness aggregating upwards of $7,000, which
it was unable to pay, and for which the property was after-
wards subjected to sale under the Hudson and Frost judg-
ments, and through which sales The Roswell Mining Com-
pany claimed its title to the property.

Appellant was notified in December, 1882, that such a
transfer or disposition of its property was contemplated, and
that, if consummated, the personal stock received by Sharp in
the new company would be held as security for the payment
of this indebtedness;  and on March 27, 1883, he was noti-
fied that the transfer had been made, and that Sharp, in pur-
suance of his previous agreement, would assign as collateral
security to him and the other parties holding the notes of
The Upper Platte Mining and Smelting Company $20,000
worth of his stock in the new company.  He made no objection
to the transaction at that time, and afterwards, on May 19,
1884, attempted, in his suit against The Upper Platte Mining
and Smelting Company, to subject the stock of The Comet
Consolidated Mining Company, given as a consideration for

the purchase of the property, to the payment of his claim; and aside from his levy of attachment also upon the property, gave no intimation of his intention to question the validity of the transfer until he commenced the present action, June 21, 1886. Under these circumstances, can the appellant invoke equitable aid in the enforcement of his legal remedy against the claims of those who, in good faith, and relying upon the validity of the title of The Comet Consolidated Mining Company, loaned money to, and performed labor for, that company? We think not. While it may be conceded that the conveyance of the title to the property by The Upper Platte Mining and Smelting Company to The Comet Consolidated Mining Company, upon the terms and under the conditions it was made, although in the utmost good faith, would be inoperative as to a nonconsenting creditor of the former company, and the property transferred would still be subject to the payment of such creditor's claim, and that The Comet Consolidated Mining Company itself might be held liable for the indebtedness of The Upper Platte Mining and Smelting Company to the extent of the assets transferred to it, yet, on the other hand, a creditor, by consenting to the transfer, or by such acquiescence therein as induced others to deal with The Comet Consolidated Mining Company under the belief that he had ratified the transaction and assented to the transfer, will be estopped from afterwards asserting his claim, to their prejudice. We think the appellant, if he did not expressly consent to the transfer of the property in question to The Comet Consolidated Mining Company, by his conduct in standing by and permitting said company to work the property and incumber it with debts for labor and materials for which it has been sold, is estopped from assailing the validity of the original transfer or the title conveyed by the sheriff's deeds in pursuance of such sales.

But for a further reason we are clearly of the opinion that appellant cannot maintain this action. The Le Bert attachment was levied upon the property thirteen days prior to his levy. The judgment Le Bert obtained against The Upper

Platte Mining and Smelting Company was assigned to Adler (for the benefit of Brown), and in pursuance of a sale under execution issued thereon, the property was sold and conveyed by sheriff's deed to Roswell P. Brown, who afterwards conveyed the title so obtained to Welch, the principal stockholder in The Plymouth Rock Mining and Smelting Company.

We cannot agree with counsel for appellant that the purchase of the Le Bert judgment by Brown operated as a satisfaction and extinguishment of that judgment. The purchase of a prior charge or incumbrance upon property, by one who claims the ownership in fee, does not in equity merge such charge or incumbrance. The rule in such cases is well stated by Pomeroy, in his work on Equity Jurisprudence, section 791:

" The equitable doctrine concerning the merger where the owner of the fee becomes entitled to the charge or incumbrance, may be stated as follows, substantially in the language of most eminent judges. Sir William Grant says: ' The question is upon the intention, actual or presumed, of the person in whom the interests are united.' Sir George Jessel says: ' In a court of equity it has always been held that the mere fact of a charge having been paid off does not decide the question whether it is extinguished. * * * If there is no reason for keeping it alive, then equity will, in the absence of any declaration of his intention, destroy it; *but if there is any reason for keeping it alive, such as the existence of another incumbrance, equity will not destroy it.*' In short, where the legal ownership of the land and the absolute ownership of the incumbrance become vested in the same person, the intention governs the merger in equity. If this intention has been expressed, it controls; in the absence of such an expression, the intention will be presumed from what appear to be the best interests of the party as shown by all the circumstances; if his interests require the incumbrance to be kept alive, his intention to do so will be inferred."

In section 798, in stating the rule particularly applicable to the facts in this case, he says :

" When an owner of the premises who is not personally and primarily liable to pay the debt secured, pays off a mortgage or other charge upon it, he *may* keep the lien alive as a security for himself against other incumbrances or titles, and thus prevent a merger. Whether he does so, is a question of intention governed by the rules laid down in the previous paragraphs.'

The intention of the parties purchasing the Le Bert judgment to prevent a merger is clearly evidenced by the terms of the assignment by which it was transferred. It therefore follows that whatever title remained in The Upper Platte Mining and Smelting Company to the property in question was, through these proceedings, subjected to sale under an attachment prior to that of appellant, and became vested, by the sheriff's deed, in Brown, and through him in Welch or The Plymouth Rock Mining and Smelting Company, which had theretofore been vested with the title conveyed by the sheriff's deeds in pursuance of the sales under the Hudson and Frost judgments.

We think, therefore, upon either of the foregoing propositions, the court below properly dismissed the action at plaintiff's costs. The judgment is therefore affirmed.

*Affirmed.*