## [No. 3651.]
## SELLERS v. FLOYD ET AL.

1. EXECUTION SALE.

The effect of a sale of land on execution is to destroy all liens which are subsequent to the lien of the judgment upon which the execution was issued, or that which it was used to enforce.

2. MERGER.

The purchase of a prior charge or incumbrance upon property, by one who claims the ownership in fee, does not in equity merge such charge or incumbrance. Where the legal ownership of the land and the absolute ownership of the incumbrance become vested in the same person, the intention governs the merger in equity. If the intention is expressed, it controls; if not expressed, it will be presumed from what appears to be the party's best interests; if his interests require the incumbrance to be kept alive his intention to do so will be inferred.

*Error to Court of Appeals.*

Mr. GEORGE S. ADAMS and Messrs. CARPENTER & McBIRD, for plaintiff in error.

Mr. J. R. ZUVER and Mr. H. C. HENDERSON, for defendant in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

THIS is an action to quiet title, and was originally brought in the district court of Boulder county by the plaintiff in error, against the defendants in error, and resulted in a judgment in his favor. Upon appeal to the court of appeals this judgment was reversed. To this judgment of the court of appeals Sellers prosecutes this writ of error.

The case was tried upon an agreed statement of facts, from which it appears that the Empress lode mining claim originally belonged to one Samuel H. Cochran, and was, on February 2, 1891, conveyed by him to The Boston & Colorado

Gold & Silver Mining Company, together with other property.

On February 6, 1893, John A. Sellers recovered a judgment against Cochran and The Boston & Colorado Gold & Silver Mining Company, and filed a transcript of said judgment in the office of the clerk and recorder of Boulder county on October 19, 1893; that a writ of attachment was issued in the action, and levied on the Empress lode on August 19, 1892.

On April 29, 1893, Elson H. Bishop recovered a judgment against Cochran and the company, and filed a transcript of said judgment in the office of the clerk and recorder of Boulder county on May 1, 1893.

On January 27, 1894, upon an execution issued upon the Sellers' judgment, the Empress lode, together with other property, was sold by the sheriff and bid in by Sellers for the amount of his judgment, and a certificate of purchase issued to him.

On July 28, 1894, Bishop caused an execution to be issued upon his judgment, and effected a redemption of the property from the sale to Sellers; and on August 22, 1894, on this execution, the property was sold to Bishop for the amount of the redemption money he had paid. Thereafter Bishop assigned the certificate of purchase to Sellers, and thereupon the sheriff executed and delivered to him a deed of the property.

On April 20, 1892, one Margaret Sargent commenced an action against Cochran and the company, and caused an attachment to be levied upon the interest of Cochran and the company in the Empress lode, and thereafter assigned her claim to Floyd, who was substituted as plaintiff.

On October 8, 1892, Floyd recovered a personal judgment against the company and a judgment against Cochran's interest in the attached property. On April 22, 1893, upon an execution issued upon this judgment, the property was sold to Floyd and a certificate of purchase issued to him therefor. On October 21, 1893, Cochran paid to the sheriff the money

necessary to redeem the property from this sale, and received a certificate of redemption in due form. On January 23, 1894, the sheriff executed a deed for the property to Floyd, pursuant to the sale to him and his certificate of purchase.

On July 6, 1892, Whitney & Metcalf commenced an action against Cochran and the company, and caused an attachment to be levied upon the property; and on October 8, 1892, they recovered a judgment sustaining the attachment, and for $193.25 and costs. On November 20, 1894, for a valuable consideration, they sold and assigned this judgment to Floyd.

On August 26, 1892, Floyd recovered a judgment against the company for $682 and costs. On August 29, 1892, he filed a transcript of said judgment in the office of the clerk and recorder of Boulder county.

On October 10, 1892, Floyd recovered a judgment against the company for $281.50 and costs; and on October 12, 1892, he filed a transcript of said judgment in the office of the clerk and recorder of Boulder county.

On March 18, 1892, the First National Bank of Boulder commenced an action against the company and Cochran, and had a writ of attachment issued therein and levied upon the property in controversy. On July 30, 1892, a judgment was rendered therein, sustaining said attachment, and for $712.08 and costs. That immediately after the rendition of said judgment, the First National Bank, for a valuable consideration, sold and assigned said judgment to Floyd.

Floyd had executions issued upon the four judgments last named; placed them in the hands of the sheriff of Boulder county for satisfaction, by sale of the property in controversy. On December 8, 1894, after levying upon and duly advertising said property for sale thereunder, he sold the property to Floyd for $2,239.85, and issued to him certificates of sale therefor.

In its able and elaborate opinion, reversing the judgment of the district court (*Floyd v. Sellers*, 7 Colo. Ct. App. 498), the court of appeals correctly announce the law applicable to

the facts in the case. There are, however, some objections urged before us, that require a brief notice. The plaintiff in error relies upon the title he derived through the sale of the property under the Bishop judgment, which, under the facts as they appear from the foregoing statement, was subordinate only to the liens that attached 'prior to the lien acquired in the Sellers case; since, as the court of appeals well say:

"The effect of a sale of land on execution is to destroy all liens which are subsequent to the lien of the judgment upon which the execution was issued, or that which it was used to enforce."

Our attention is called to the fact that the learned writer of the opinion overlooked the recital in the agreed statement, of the time of the levy of the attachment in the Sellers suit, and thereby gives to two of the Floyd judgments a priority to which they are not entitled. While it is true, as stated in the opinion, that there is nothing in the complaint to show that Sellers had any lien upon the property prior to the recovery of his judgment on February 6, 1893, yet it does appear in the agreed statement that an attachment was levied on August 19, 1892. This statement was perhaps inadmissible under the complaint, yet it being a conceded fact, and upon amendment of the complaint might be admissible on a subsequent trial, we will regard it as properly in evidence, and determine its effect upon the liens created by the two judgments recovered by Floyd in his own name, transcripts of which were filed in the office of the clerk and recorder on August 29, 1892, and October 12, 1892. It being conceded that the lien of the attachment in the Sellers case antedated these judgments, it follows that the liens created thereby were extinguished by the sale under that judgment. Yet, notwithstanding this result, the agreed statement discloses three other liens held by Floyd that antedate the lien through which plaintiff's title was derived; to wit: the judgment he recovered on April 8, 1892, on the Margaret Sargent claim, the Whitney & Metcalf judgment, and the

judgment he acquired from the First National Bank. It is claimed that the first of these liens was extinguished, and that the sheriff's deed issued to Floyd in pursuance of a sale thereunder was avoided by the redemption, by Cochran, of the property from this sale, on October 21, 1893; and the court of appeals so held in *Floyd v. Sellers*, 7 Colo. Ct. App. 491, which case is also before us, and was argued and submitted with the case now under consideration.

However this may be, this question has ceased to be of any controlling effect in the case, since, as we have seen, there are the First National Bank and the Whitney & Metcalf judgments, which constituted liens upon the property prior and paramount to the attachment lien acquired by Sellers; and upon which judgments, executions were issued, the property sold thereunder to Floyd on December 8, 1894, and certificates of purchase issued to him therefor.

The court of appeals was of the opinion that the Whitney & Metcalf judgment was not entitled to consideration in this case because it was purchased by Floyd after the suit was brought. While it is true that the suit was commenced on November 5, 1894, and the judgment did not become the property of Floyd until November 20, 1894, the record discloses that on January 19, 1895, by stipulation of counsel, Floyd was permitted to amend his cross-bill setting up his ownership of this judgment, the issue of an execution thereon, and a sale of the property to him thereunder on December 8, 1894; to which amendment, or supplemental pleading, the plaintiff filed his answer on January 21, 1895; and, as shown in the stipulated facts, this was one of the issues submitted to the trial court.

It is further contended, that by his purchase and acquisition of title under the judgment in the Sargent case, the other liens that Floyd then held became merged and extinguished. This claim is untenable for two reasons: First, the property sold under the Sargent judgment remained subject to redemption by the owner, and might or might not ripen into a superior title, into which other liens might

merge; second, because the purchase of a prior charge or incumbrance upon property, by one who claims the ownership in fee, does not in equity merge such charge or incumbrance. As was said in *Vaughn v. Com. Con. M. Co.*, 21 Colo. 54:

"Where the legal ownership of the land and the absolute ownership of the incumbrance become vested in the same person, the intention governs the merger in equity. If this intention has been expressed, it controls; in the absence of such an expression, the intention will be presumed from what appear to be the best interests of the party, as shown by the circumstances; if his interests require the incumbrance to be kept alive, his intention to do so will be inferred."

It is evident that the very purpose for which Floyd purchased these other and prior liens was to preserve and keep them alive, so that, in case the title acquired by his purchase under the Sargent judgment was defeated, he might avail himself of these liens to acquire title to the property.

From the conceded facts in this record, it is manifest that Floyd has become vested with the title to the property in question. The judgment of the court of appeals is therefore affirmed, and the cause remanded, with instructions to that court to direct the court below to enter a decree quieting such title in him.

*Affirmed.*