# SEPTEMBER TERM, 1899.

## [No. 1459.]
## PADDACK v. STALEY ET AL.

1. EXECUTION SALES—REDEMPTION.

The right of redemption from an execution sale is purely a statutory
right and does not exist without the statute.

2. EXECUTION SALES—REDEMPTION—JUDGMENT CREDITORS.

Under the Colorado statutes a judgment creditor may redeem from an
execution sale of real estate regardless of whether or not his judg-
ment is a lien on the property, and regardless of the date of entry
of judgment. There are no prior rights of redemption as between
judgment creditors.

3. SAME—JUDGMENT LIENS.

An execution sale of real estate extinguishes all subsequent liens, but
a sale under a junior judgment cannot cut out a prior judgment lien.

4. SAME.

Where an execution sale was made under a junior judgment and after-
wards the same land was sold under an execution issued upon a
judgment with a prior lien, the later sale supersedes the former and
extinguishes the lien, and the judgment creditor is placed on an
equal footing with all other judgment creditors as to the right of
redemption from the sale under the prior lien judgment.

5. EXECUTION SALES—REDEMPTION—DILIGENCE.

The extreme diligence used by a judgment creditor in presenting his
execution and redeeming from an execution sale fifteen minutes
after midnight on the first day redemption might be made, does
not impeach the legality or regularity of his right so as to permit
other prior judgment creditors to redeem ahead of him.

6. EXECUTION SALES — REDEMPTION—JUDGMENT—FORECLOSING ME-
CHANIC'S LIEN.

The fact that a judgment was one for the foreclosure of a mechanic's
lien, does not affect the right of the judgment creditor to redeem
from a prior execution sale.

7. JUDGMENTS—RECEIVERS—JURISDICTION.

In a proceeding by petition for the appointment of a receiver of a cor-
poration for the purpose of an accounting where there was no com-
plaint alleging the indebtedness of the corporation and no service
of process upon the corporation, the court had no jurisdiction to
enter a judgment against the corporation.

8. RECEIVERS—RIGHTS OF ACTION AGAINST CORPORATIONS.
The pendency of receivership proceedings for a corporation does not
affect the right of creditors to sue the corporation.

*Appeal from the District Court of Summit County.*

THE history and details of this case are of unusual and
extreme importance in determining the controversy. Some
of the features which are of minor importance will be omitted,
and only those things stated which are pivotal and funda-
mental in their character.

The Oro Mining & Milling Company was a Colorado cor-
poration owning real estate and mining property in Summit
county. There were several claims in the group, together
containing eighteen and twenty-one hundredths acres with
mill buildings, machinery, improvements and fixtures appur-
tenant and incident to the ownership and possession. The
company became embarrassed, failed to pay for its supplies
and labor, and sundry suits were brought against it and
prosecuted to judgment. Some of them which will be ad-
verted to are of little importance in determining the actual
controversy, but since they may assume a larger significance
in the ultimate prosecution of the litigation they will not
only be referred to, but their status will be determined. The
matter of the recovery of the judgments and the filing of the
transcripts are unusually significant as determining the prior-
ity of right as between the judgment creditors as well as
affecting the absolute interests of the parties to those records.
The judgment which is first in time and first in right is what
is termed in the record the Kaiser judgment, and on July 29,
1892, the transcript was filed for record in the office of the
county clerk, whereby it became a lien on the realty of the
company. An appeal was taken from this judgment to this
court and some years afterwards was affirmed and a remitti-
tur issued. Intermediate the recovery of the original judg-
ment by Kaiser and its affirmance in this court other parties
brought suit and likewise obtained judgments. These suits
and judgments will not be stated in detail, but they will be

referred to in the opinion as the Staley, Morrison, Stouffer, Giant Powder Company and Paddack judgments. This designation by the name of the principal party is an adequate description of each suit. The Staley judgment is next in order of time to the Kaiser. This was a suit brought by Staley on behalf of himself and many others to foreclose a mechanic's lien for wages. Foreclosure followed, the lien was established and an order entered for a special execution. A personal judgment was also rendered against the company for the amount claimed. This was followed by another judgment in a suit begun by Morrison. The Giant Powder Company commenced a suit by attachment against the company for supplies, prosecuted it to judgment and in January, 1894, issued an execution, sold the property and Smails became the purchaser. Reference will now be made to the Stouffer judgment. One Thompson who was the general manager and an officer of the company, filed a bill in Arapahoe county wherein he sought the appointment of a receiver, not to wind up the affairs of the company but for an accounting, and on an accounting to obtain any relief to which he might be entitled, and thereunder different persons were from time to time appointed receivers to take charge of the corporate property and work it during the litigation. The receivers went into possession, proceeded with the work, contracted debts and incurred liabilities. While this suit was pending and before its determination Stouffer filed petitions in the case setting up claims against the company which he sought to enforce, and ultimately obtained what he claims to be a judgment against the company. No complaint was ever filed by him nor any process served on the company, nor did it enter any appearance therein, nor was one entered by any one authorized to represent it, otherwise than as there might have been an appearance by the receiver which is regarded as unimportant. We will now recur to the Kaiser judgment. After this had been affirmed and the remittitur had gone back Kaiser sued out an execution, levied it on the property, and

under it on the 4th of April, 1894, a sale was had and the property sold for the sum due on it.

After all these things had been done, Paddack, who claimed to be a creditor of the company for a large amount,—some $11,000 or $12,000,—brought suit in Arapahoe county, served his process on Thompson as an officer of the company, and in September, 1894, obtained a judgment.   September 29, 1894, he filed a transcript in Summit county, issued an execution on October 3, 1894, and then attempted to affect a redemption under the statute.   The sale under the Giant Powder judgment was in January, 1894, the sale under the Kaiser judgment was on the 4th of April, 1894, and the period within which the owner, to wit, the Oro Mining & Milling Company might redeem from the Kaiser judgment expired on the 4th day of October of the same year, 1894.   In diligent pursuit of his remedy, Paddack's execution was placed in the sheriff's hands at quarter past twelve on the morning of the 5th, and he paid the sheriff the sum necessary to redeem from the Kaiser judgment.   He then directed the sheriff to sell under his execution, and as the officer was proceeding Staley and his coplaintiffs likewise tendered to the sheriff the sum necessary to redeem from the Kaiser sale, which was refused, and thereupon Staley and his coplaintiffs filed this bill.   The bill is broad in its terms and in the relief prayed.   Substantially it sought to restrain the sheriff from proceeding to enforce the Paddack execution to compel him to accept their redemption money, and likewise to declare the Paddack judgment void.   We are not concerned with the bill as an entirety but what has been stated will exhibit its general scope and purpose.

This suit was not heard on testimony, but on a stipulation of facts.   This stipulation simply exhibited in detail the history and course of the various suits, described the judgments, gave the dates of their rendition, and so far as the matters could be determined from the records, exhibited the rights of the parties as they were established by the several judgments. The plaintiffs offered no proof in support of the case made

by the bill, other than the statements in the stipulation respecting the judgments and executions and the acts of the parties thereunder.

The bill contained a paragraph which charged generally, that the Paddack judgment was fraudulent and void. Part of the allegations and particularly those referring to the commencement of the suit in the district court of Arapahoe county, and various matters of that description, as well as the references to Thompson's suit for the appointment of a receiver will not be stated. We regard them as of very slight significance. The plaintiffs then undertook to charge that the causes of action pleaded by Paddack were falsely and fraudulently pleaded. That the notes sued on were not the notes or obligations of the company ; that none of them were executed in the name or by the authority of the company, were without consideration and represented no indebtedness owing to Paddack by assignment or otherwise. This is the only allegation containing matters which would in any wise tend to furnish matter for an attack on the judgment as we are able to read the complaint. This allegation lacks some of the elements of good pleading. The plaintiffs only charge that they are informed and believe these various facts, but they nowhere aver them to be true, nor is there any distinct and specific allegation which directly avers that these notes were not the notes of the company. If the averment respecting this matter had been in an independent sentence an allegation of this legal effect might be extracted from it. We refer to this defect because in the subsequent progress of the litigation the matter may become of some significance and the parties may attempt hereafter to base a suit on it. As we before observed no proof was offered on this subject. We might have omitted this statement, but as we shall have occasion to again refer to it in the opinion, we deemed it best to state it.

On this bill and the answer which denied the allegations of the complaint, the court rendered a very extraordinary decree. Therein he declared the amounts and the priority of the liens, found the tender was made by the plaintiffs to the

sheriff for the purpose of redemption, and that they brought the money into court to keep the tender good. He found that Paddack as an execution creditor by a regular compliance with the statutory requirements attempted to redeem from the execution sales; as a matter of law he adjudged that this attempt to redeem in no manner affected the rights of parties owning prior judgments, and that they still had the right to equitably redeem the property by reason of their vested interest therein, and that notwithstanding the Paddack redemption any other prior judgment creditor could redeem, and that the sheriff was bound to accept the redemption offered by Staley and his coplaintiffs to the exclusion of Paddack. He restrained the sheriff from selling the property under Paddack's execution and held that he was bound to take the money which was tendered to the sheriff. The court then proceeded to decree among other things a sale under the decree on a special execution as on the foreclosure of a mortgage, with directions to distribute the money among the various judgment holders according to the priority and dates of their several judgments. There were other equally extraordinary provisions in it, but the limits of the opinion will not permit their statement. Exceptions were duly taken both to the findings of fact and the conclusions of the court. Paddack then prayed an appeal.

Messrs. TELLER & ORAHOOD and Mr. CHARLES M. KENDALL, for appellant.

Mr. HARVEY RIDDELL, Mr. M. B. CARPENTER, Mr. W. M. CLARK and Mr. C. A. WILKIN, for appellees.

BISSELL, P. J.

The principal question presented herein respects the right to redeem from a sale under an execution issued on a judgment rendered in an action at law, and the parties who may exercise it. The bill was drafted, the case tried, and the decree

rendered on the hypothesis that notwithstanding our statute which provides for the redemption of property from an execution sale and determines the mode and method of that redemption and declares the rights of both debtor and creditor, there exists outside of it and beyond it, an equitable right to redeem as in cases where junior mortgagees, or judgment creditors, have not been made parties to foreclosure proceedings. This we cannot concede. The right to redeem from an execution sale is a purely statutory one. It does not exist without the statute, and it is only under and by virtue of some statutory right that parties may attack the title which the purchaser obtains at an execution sale regularly held on a valid judgment. All the authorities agree on this proposition. Rorer on Judicial Sales, chap. 18, § 1184 *et seq.;* 2 Freeman on Executions, chap. 23, § 314 *et seq.*

Many cases to this direct point might be cited, but the general doctrine and the supporting decisions are referred to in these text books. We do not intend to hold that there may not, under some circumstances, be an equitable right of redemption. This phrase, " equitable right of redemption," must not however be taken according to the ordinary significance of the words, nor must it be taken in its broadest or fullest extent. All we intend to hold is, that a party having a right of redemption, which he has attempted to exercise under and according to the statute, but which he has failed to effectuate by reason of some excusable fact, or where he has attempted to make it and his right has been refused by the officer holding the execution, or where by reason of collusive judgments which are fraudulent as to him he is unable to complete his statutory redemption, he may file a bill in equity setting up the facts on which his right rests, the facts which constitute his excuse or which obstructed the redemption, and making due proof obtain a decree which shall establish it. But in the end the result is, that the decree simply establishes his legal statutory right. There may be other cases than those which we have suggested under which a bill might be filed to this end. We do not

undertake to state all possible exceptions. We hold that there is no such general right. None is provided for in the statute, nor do we find any has been established by adjudication. The authorities agree that it is only by virtue of a statute that redemption from an execution sale may be made. We thus dispose of one of the fundamental contentions of the appellees and the real proposition on which the bill was based and the decree entered.

We now come to a more pertinent and particular principle on which the appeal turns. Paddack's right to redeem is disputed because his judgment was not a lien on the property at the time of the antecedent sales, and because there was nothing to which a lien could attach when he filed his transcript, sued out his execution and made his redemption. This contention is not supported by any well-considered authorities to which our attention has been directed. It is undoubtedly stated in some of the text writers and some of the cases that the judgment creditor must have a lien at the time he attempts to exercise his right. But those decisions were rendered in states where the redemption statutes provide that only lien creditors may exercise the right. The rule is held otherwise in Illinois under a statute similar in phraseology to ours, and in that state any judgment creditor may redeem. 2 Freeman on Executions, chap. 23, § 317; *Karnes v. Lloyd*, 52 Ill. 113; *Couthway v. Berghaus*, 25 Ala. 393; *Pease v. Ritchie et al.*, 132 Ill. 638.

Unless the statute requires a lien, a judgment creditor may redeem regardless of the date of the entry of the judgment, providing he makes redemption within the statutory time. All other questions being resolved in his favor Paddack then, on the 5th of October, had a right to make redemption; and these matters, viz, the time his judgment was entered, the time he filed his transcript, the time he issued his execution, or the time he attempted to redeem, do not affect his right. There are statutes which require that the redemption shall be made in the sheriff's office and between hours designated, as the statutes generally provide

that execution sales must be made between nine o'clock in the morning and sundown. Wherever such enactments are in force the courts hold that there must be an exact compliance with them, and an attempted redemption elsewhere, or under other circumstances, or at different hours, or different places, would be wholly ineffectual. However, any criticism with reference to Paddack's procedure because of the time and circumstances of his redemption is entirely foreign to any real question involved, and in no manner affects his acts or his claim. Whatever moral criticism might be put on the extreme diligence which would lead a creditor to deliver his execution fifteen minutes after midnight does not impeach the legality or the regularity of the right.

Having thus disposed of the equitable right of redemption and the regularity of Paddack's judgment and redemption, we have practically decided that Paddack acquired some rights to which the prior judgments, to wit, Staley, Morrison, Giant Powder Company and Stouffer are undoubtedly subject. What those rights are, how they were affected by what was done, has been entirely and completely settled by the adjudications of this court in an opinion which was approved by the supreme court. The case to which we refer is *Floyd et al. v. Sellers*, 7 Colo. App. 498. *Sellers v. Floyd et al.*, 24 Colo. 484.

This case undoubtedly decided in the language of Judge Thomson that, " the effect of a sale of land on execution is to destroy all liens which are subsequent to the lien of the judgment upon which the execution was issued, or that which it was used to enforce." It also holds that the purpose for which the judgment creditor is permitted to redeem is to revive his own judgment lien. This language was undoubtedly used by the learned judge as applied to the particular case and not as an absolute expression of the entire effect of a redemption, nor is it an attempt to state all the cases to which the statute would apply or the effect of redemption acts in all the cases which might arise under the statute. When the learned judge says that its effect was to revive a judgment lien, it was

not intended to decide that there must be a lien to revive, or that a judgment creditor who held no lien when he attempted to redeem might not acquire rights under the statute. This much of an explanation is necessary because in the present case, Paddack acquired no lien when he filed his transcript. The debtor had no interest in the property because it had been sold. It had been sold twice, once under a judgment prior to all the others, to wit, the Kaiser, and second, under a judgment of the Giant Powder Company. The estate of the debtor was gone, he could not redeem, and the subsequent judgment creditors could only exercise the naked right of redemption. There was nothing to which Paddack's lien could attach. This must be true in the present case because the sale of the Giant Powder Company on the 23d of January, 1894, was more than six months prior to the time Paddack filed his transcript and issued his execution; the hour of redemption was therefore gone as to the debtor and he had nothing to which the lien could attach. As applied to all cases, perhaps the expression would be more accurate, if it had been put as a revival of the creditor's judgment rights in place of a revival of a judgment lien. This, however, is not put by way of criticism on the accuracy of the opinion of Judge Thomson as applied to the case then under consideration, but to show that as a general definition it might not be under all circumstances exactly accurate. The learned judge however, proceeds further: " The others which were extinguished by the sale, remain extinct; and notwithstanding they may have been superior to his in point of time, the holders, not having availed themselves of the provisions of the statute permitting them to redeem, can claim no advantage by reason of his redemption; and if the property is struck off to him for the amount of the redemption money and interest, he takes the title discharged from the liens of the prior judgments, and subject to no further redemption." This doctrine was completely approved by the supreme court in the case referred to, which also holds that sales under subsequent judgments are inoperative on prior and paramount

liens on the property for which it may be afterwards sold. The language "takes the title discharged from the liens of prior judgments" has been unduly extended in the argument. Overlooking the facts in the *Floyd v. Sellers* case and the scope of the decision, it is argued that this result follows a sale under a junior as well as a sale under a paramount judgment; that a sale under a junior judgment cuts off senior as well as later liens. This is not true, nor did the court so decide. The whole tenor of the opinion was to the proposition and this only, that when a sale was had under a prior and paramount judgment it effectually cut off all later judgment claims and left to them the naked statutory right. The importance of this distinction is apparent when we remember that the Giant Powder Company's sale was in January, 1894, and the Kaiser sale in April. It might otherwise be imagined that the *Floyd v. Sellers* case was a direct adjudication to the point that the sale under the Giant Powder Company's judgment would cut off the prior and paramount lien held by Kaiser, or by Staley and Morrison. This manifestly could not be true because a judgment creditor and lienor cannot cut out prior lienors by a sale. These two decisions also hold that the sale under the Kaiser judgment extinguished all claims of Staley, Morrison, the Giant Powder Company and Stouffer, and everybody else who were subsequent in time. When the liens are extinguished the judgments are extinct for all practical purposes of enforcement by sale. By this process we are brought to the consideration of the direct and pivotal question in the case, What right Paddack acquired by virtue of his redemption?

On the 4th of April the property was sold under the Kaiser judgment, the purchaser took title free from the lien of the judgments of Staley, Morrison, the Giant Powder Company, Stouffer, or Paddack, or any judgment which had been or might thereafter be rendered up to the time of the expiration of the period of redemption, but there remained to each the right to redeem from the Kaiser judgment and to one equally with every other. This is the condition of our redemption statute.

It is an unfortunate piece of legislation which loudly calls for legislative correction. The courts are impotent to aid creditors and only the lawmaking power may furnish a remedy. Many states provide that subsequent judgment creditors shall have the right to redeem according to their priority and within dates and times named in the act, so that each judgment creditor may exercise and preserve his lien and his claim not by excessive diligence and redemption in the midnight hour, but within specific limits. Manifestly this would be right and proper. But there is no such provision in our statute. Any judgment creditor may redeem within the time specified ; he may be, the first, the second, the fifth, or one who has come into the vineyard at the eleventh hour and he will receive as much benefit from the statute as though he had been originally hired.

Since we decide that Paddack's right is not affected by the date at which his judgment was recovered, the time at which the transcript was filed, or by the fact that it was not a lien, Paddack on the 5th of October had the absolute statutory right to sue out an execution, pay to the sheriff the amount of money necessary to redeem from the Kaiser judgment and have the property put up and sold under his execution, and this notwithstanding the fact that Staley, Morrison, the Giant Powder Company, or Stouffer may have been or were prior judgment creditors. Since they did not proceed first he might have the property sold under his execution. This situation is fairly deducible not only from the equitable doctrine which has long been established and recognized in all courts, but from the very terms of the statute. From the situation of these various judgment liens it is manifest that by the recovery of his judgment, the filing of his transcript and the issuance of his execution, Paddack acquired no equity in the property, no lien, no power to enforce one, nor is there any procedure open to him to collect his judgment, other than the one which the statute gives. He might do precisely the thing which he did and thereby acquire a definite, ascertained priority of right of redemption and only this limited privilege. When Paddack

effected a redemption from the Kaiser judgment by paying the sheriff the amount of the Kaiser sale plus the interest and costs, he could have the property put up for sale on his execution and when the sheriff offered it he made a statutory bid, to wit, the amount which he paid to redeem from the Kaiser judgment. The statute makes a bid for him, to wit, the amount of his redemption. If no bid is made by another the property is struck off to him and he gets a deed to it. What the effect of this deed would be in case the sale was made under an intermediate judgment and a redemption was offered by a creditor on an antecedent judgment which was a prior lien, we neither undertake to determine nor do we intimate any opinion about it. There is nothing in the case which calls for the determination of this question and it must be left open for future consideration. In the present case since the deed would convey the Kaiser interest, he would doubtless take title discharged of the lien of all other judgment creditors who were parties to this suit. There also would come to Paddack this further reward for his diligence; if the property be worth more than the amount of the Kaiser judgment and there were parties both able and willing to bid on it, whatever money was paid by the bidder would be credited on the Paddack execution and to this extent and to this only would he obtain satisfaction of his execution and judgment. Thereafter, if within the statutory period any other creditor should attempt to redeem, it would probably be true that they would be compelled to pay the sheriff not only the amount which Paddack had paid to redeem, but also the amount which the new purchaser, and these words "new purchaser" are used in the statute, had paid at the sale. These other redeeming creditors would thus have to pay the Kaiser judgment plus the sum paid which was credited on the Paddack execution. This much of a sacrifice of the rights of judgment creditors who were prior to Paddack, is doubtless inevitable and necessary under the peculiar provisions of our redemption statute and the particular facts of this case. We have been extremely careful, however, and it might be said, even close, critical and

astute to indulge in a very strict construction of the act that we might so far as was possible give to the owner of the junior judgment no other or greater rights as against the prior lienors than those which were clearly and unmistakably conferred by the statute. As we read it, we have given him all that the statute directs and to more he is not entitled. We do not decide nor do we hold that under other circumstances the right of redemption is the only legal right held or enjoyed by prior lienors. Whether this privilege could be waived and a sale had under prior judgments, where the redemption was not from a paramount lien, is a question not presented by this record.

We shall pass very lightly over a point on which counsel laid great stress respecting the character of the attack on the Paddack judgment whether collateral or direct, and respecting the right of the appellees in a proper bill filed in a proper cause with right allegations to attack it for any of the reasons stated in their complaint. The character of the attack is of no significance since we adjudge that the bill cannot be maintained. It may be well, however, for us to suggest that we do not intend to decide that under proper allegations and with adequate and competent proof Staley might not have assailed the Paddack judgment because the company did not owe the debt on which it was rendered. It may be true, and about it we express no definite conclusion, on proof that the notes or debts sued on by Paddack were not the notes or debts of the company and not legitimate claims against it. Staley or the other lienors might rest a suit to effectuate their rights and thereby maintain their privilege to redeem from the Kaiser sale. It is generally true that creditors have no concern with the results of suits by other creditors against a common debtor in so far as the suits or judgments may overreach the debtor. But wherever the judgment is rendered on invalid claims or upon things which are not debts or obligations of the common debtor, the plaintiff in the suit may under some circumstances show this, because the suit must of necessity either be collusive as between the recovering creditor and the debtor, or possibly, the law would attach

the presumption that there was collusion and permit the creditor whose rights were injuriously affected by this fraudulent judgment to attack it. This has been so held. *Arnold v. Gifford*, 62 Ill. 249.

It must not be understood that we are attempting to define all the conditions or limitations which of necessity must surround a proceeding of this sort, or the circumstances under which the bill would lie; we only refer to the proposition because it has been so vigorously urged on our attention and because we are quite of the opinion that there might be some foundation for the contention under different circumstances. As we suggested in the statement, the stipulation on which the case was heard presents no agreed fact on which such a claim can be rested, nor does the record contain any evidence to support that part of the plaintiffs' bill. It probably would have been enough to simply suggest this consideration and place our decision on it.

This decision disposes of all the questions which are likely to arise in the pursuit of this litigation or in any which may arise by reason of it. It is quite possible that there are some other contentions which ought to be disposed of. The questions are really presented by the record, and we have a right to decide them, and we think it wise to make some suggestions about them.

We have no doubt whatever that Staley could have redeemed from the Kaiser judgment and the fact that his judgment was one for the foreclosure of a mechanic's lien which established the lien in no manner affected his right. The appellant's contention that by the issuance of an execution he lost his lien, or waived it because he issued an execution against the company, is not sustained by the stipulation. The execution itself is not before us and we are not advised as to its character. It does not, however, distinctly appear to have been an execution on the personal part of the Staley judgment. We are therefore not called on to decide whether it comes distinctly within the case of *Finch v. Turner et al.*, 21 Colo. 287. We do not think it would come within the

principle of that case. Staley did not intend to waive his lien. The execution was issued for the purposes of redemption, and it might be, although we do not directly decide it, that he could have issued this sort of an execution for redemption purposes without at the same time waiving his right to a lien. Morrison was in the same condition and under his judgment could have exercised the right of redemption.

The Stouffer judgments we regard as of no force or significance. They are not judgments at all. The appellees can take advantage of the defects clearly exhibited by the record in any litigation wherein the question may arise. It was only by petition in the receivership proceedings that the so-called judgments were rendered; they were entered without suit. There was no complaint, no process, no service of any sort, nor any act by any officer of the company or anybody else which they had a right to do and which would bind the company, and the court acquired no jurisdiction of the Ore Mining & Milling Company to enter a judgment in favor of Stouffer.

The Giant Powder Company acquired nothing by its proceedings for its initiated rights were entirely lost by reason of the Kaiser sale and the failure of the company to redeem from it. Whatever might have been the effect of the sale on Paddack's rights, that company itself lost any claim which it might have had because it neither bid at the Kaiser sale nor thereafter attempted to redeem from it. The Kaiser sale wiped out the Giant Powder Company's sale, its judgment, and the deed thereunder, and that company was only left the naked right to redeem. Failing to exercise it, we do not discover that its sale or its deed in any manner affects the rights of the parties.

We see no occasion to consider the character, force or effect of the proceedings in the Thompson receivership because there is only one proposition presented by counsel respecting it and that is as to the right to bring suit against the company notwithstanding the pendency of these proceedings. As we look at it, the proceedings were not begun for the pur-

pose of winding up or dissolving the corporation, but simply to obtain an accounting between Thompson and the company and put the possession of the property in the mean time in an officer of the court for management and control pending the final decree.   It has many times been decided that a suit of this description is not a destruction of the corporate capacity or the powers of its officers, and does not impair or affect the right of its creditors to bring suit for the enforcement of their claims.   *Heath v. M., K. & T. Ry. Co.*, 83 Mo. 617 ; *O. & M. Ry. Co. v. Russell*, 115 Ill. 52 ; *People v. Barnett*, 91 Ill. 423 ; *Kincaid v. Dwinelle*, 59 N. Y. 548 ; *Pringle v. Woolworth*, 90 N. Y. 502 ; *Decker v. Gardner*, 124 N. Y. 324.

This discussion disposes of every matter which we conceive to be important.   We do not wish to be understood as deciding or determining what the appellees' rights may be when a sale occurs under the Paddack execution other than as we have indicated.   Whether the appellees have lost their rights by filing this bill and prosecuting this litigation and permitting three months to go by, we do not determine.   We should be very glad to express our views respecting it but the matter is not presented in such shape as to justify it.   What we have determined disposes of this bill, reverses the judgment and leaves the parties to stand on whatever rights they may have after a sale has been had under the Paddack judgment. Ordinarily we like to settle a controversy and we would not shrink from that labor in the present case if the record contained facts on which we might proceed.   As we view it, we have decided every question which we have a right to consider, and for the many errors inhering in this decree the judgment will be reversed and the cause remanded.

*Reversed.*