**UNITED STATES of America, Appellant,**

v.

**STATE OF COLORADO, Appellee.**

**No. 87–1957.**

United States Court of Appeals, Tenth Circuit.

April 7, 1989.

William S. Eastabrook (Michael C. Durney, Acting Asst. U.S. Atty. Gen., and Michael L. Paup, Wynette J. Hewett, and Richard J. Driscoll, Attys., Tax Div., U.S. Dept. of Justice, Washington, D.C., with him on the briefs), Dept. of Justice, for appellant. Robert N. Miller, U.S. Atty., of counsel.

Steven M. Bush (Duane Woodard, Atty. Gen. of Colo., Charles B. Howe, Deputy Atty. Gen. of Colo., and Richard H. Forman, Colorado Sol. Gen., with him on the brief), Asst. Atty. Gen. of Colo., General Legal Services Section, for appellee.

Before ANDERSON, McWILLIAMS, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This appeal arises from a dispute between the United States Government and the State of Colorado (State) over property that the State seized and sold to satisfy state tax liens. The district court granted

summary judgment in favor of the State, holding that the State's purchase of seized property at a tax sale did not extinguish the State's tax liens, and that state tax liens retained their priority over federal tax liens despite the fact that the State failed to give notice to the government prior to sale as required by I.R.C. § 7425. We affirm.

### I.

We will affirm a grant of summary judgment if it is clear from the record that there are no genuine issues of material fact and the defendant is entitled to judgment as a matter of law. *Willner v. Budig*, 848 F.2d 1032, 1033–34 (10th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989). Such affirmance need not be based on the grounds relied upon by the district court, but may be based on any proper grounds for which there is a record sufficient to permit conclusions of law. *Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir.1988). The district court decided this case based upon stipulated facts; therefore no material facts are in dispute.

On September 16, 1981, and March 29, 1982, the State filed liens against the taxpayer, Gourmet Junk Foods, Inc., for $3,087.66 of unpaid Colorado labor and employment taxes. On March 29, 1982, the IRS also made assessments against the taxpayer for unpaid federal withholding taxes and FICA taxes totaling $7,067.59. The IRS filed notices of federal tax liens with Pitkin County, Colorado on June 23, 1982, and with the Secretary of State on June 24, 1982. The parties concede that the state liens initially had priority over the federal liens.

On January 24, 1983, the State seized and stored personal property of the taxpayer for the purpose of protecting its liens. On February 7, 1983, the State held a public auction of the seized property pursuant to Colorado law. *See* Colo.Rev.Stat. § 39–21–114 (1982). The State did not give prior notice of this sale to the IRS as required by I.R.C. § 7425(c)(1). Because the highest bid tendered at the auction was insufficient, the State purchased the property. *See* Colo.Rev.Stat. § 39–21–114(2)(a) (1982).

On March 31, 1983, the IRS served a notice of levy on the State, demanding that the State turn over all property in its possession that belonged to the taxpayer. The State did not comply with this demand and, furthermore, sold the property to a third party for $7,000 on April 14, 1983. The IRS served a final demand for the property on April 15, 1983, and the State persisted in refusing to turn over the property or the proceeds.

The Government initiated litigation in the district court on April 9, 1985. The Government argued that because the State did not comply with the notice requirements of I.R.C. § 7425(c)(1), its junior lien survived the sale of the property. Further, because the State purchased the property at the sale, the Government contended that the doctrine of merger operated to extinguish the State's lien. The State conceded that the federal tax liens survived the sale, but disputed the extinguishment of the state tax liens.

The district court granted summary judgment in favor of the State, ordering that the State retain that portion of the property necessary to satisfy state tax liens and costs, with the remainder to be paid to the Government. The Government appeals from this order.

### II.

We must decide whether the State's purchase of the property, without giving notice to the government as required by I.R.C. § 7425, extinguished the State's senior lien by merging that lien with fee title to the property, thereby elevating the federal tax lien to first priority. Federal law governs the priority of a tax lien against other claims to property. *Aquilino v. United States*, 363 U.S. 509, 513–14, 80 S.Ct. 1277, 1280–81, 4 L.Ed.2d 1365 (1960); *United States v. Wingfield*, 822 F.2d 1466, 1473 (10th Cir.1987), *cert. dismissed*, — U.S. —, 108 S.Ct. 1762, 100 L.Ed.2d 222 (1988); *see* I.R.C. §§ 6321–6323. Unless Congress has stated otherwise, however,

we look to state law in determining what constitutes a property interest or right to property to which a federal tax lien may attach. *United States v. Brosnan*, 363 U.S. 237, 240–42, 80 S.Ct. 1108, 1110–12, 4 L.Ed.2d 1192 (1960); *see Bigheart Pipeline Corp. v. United States*, 835 F.2d 766, 767 (10th Cir.1987). Accordingly, whether merger applies in this case must be answered by reference to state law. *See First American Title Ins. Co. v. United States*, 848 F.2d 969, 971 (9th Cir.1988) (applying California law of merger); *United States v. Polk*, 822 F.2d 871, 874 (9th Cir.1987) (applying Arizona law of merger); *Southern Bank v. IRS*, 770 F.2d 1001, 1007 (11th Cir.1985) (applying Alabama law of merger), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2890, 90 L.Ed.2d 977 (1986).[1]

## A.

Under Colorado law, the doctrine of merger does not automatically apply when the same person acquires a greater estate and a lesser estate in property. "The doctrine of merger ... is not a rule of property; the question of merger depends upon intent...." *Hart v. Monte Vista Bldg. Ass'n*, 82 Colo. 204, 257 P. 1079, 1079 (1927).

> In law a merger always takes place when a greater estate and less[er] [estate] coincide and meet in one and the same person, in one and the same right, without any intermediate estate, *unless a contrary intent appears*. The question is upon the intention, actual or presumed, of the person in whom the interests are thus united.

*Goldblatt v. Cannon*, 95 Colo. 419, 37 P.2d 524, 526 (1934) (emphasis added); *see Colorado Nat'l Bank–Exchange v. Hammar*, 764 P.2d 359, 361 (Colo.Ct.App.1988).

If no actual intention to preserve the lien has been expressed, such an intent

> will be presumed from what appear to be the best interests of the party, as shown by all the circumstances. If his interests require the incumbrance to be kept alive, his intention to do so will be inferred.

*Vaughn v. Comet Consol. Mining Co.*, 21 Colo. 54, 39 P. 422, 424 (1894) (quoting Pomeroy, *Equity Jurisprudence* § 791); *see Sellers v. Floyd*, 24 Colo. 484, 52 P. 674, 675–76 (1898) (intent to preserve junior liens inferred when property owner purchased such liens to protect himself in the event that his title to property was defeated).[2]

■ Here, the State's interests plainly support an inference that the State intended to preserve its lien in the property. By purchasing the property at the auction, the State intended to protect its lien, and perhaps junior lienholders, by preventing the property from being purchased at below its market value. It would be an absurd result to conclude that the State intended to destroy its own lien, which in this case would preclude collecting any part of its debt, by taking action that arguably benefited junior lienholders. Absent evidence of intent to the contrary, we therefore presume that the State intended to preserve its lien.

## B.

The Government contends that, regardless of the state law doctrine of merger, section 7425 requires that a senior lienholder who fails to give notice to the government prior to sale of property held as collateral, and who purchases such property at the sale, loses the priority of that senior

---

**1.** One district court has interpreted *Southern Bank* as requiring application of the doctrine of merger as a matter of federal law. *See Title Guar. Co. v. IRS*, 667 F.Supp. 767, 771–72 (D.Wyo.1987). We reject this interpretation. We read *Southern Bank* as holding that the foreclosure sale there resulted in a complete merger of title as a matter of Alabama state law. To the extent *Southern Bank*'s analysis may rely on preemption by I.R.C. § 7425(b), we disagree.

**2.** Colorado has codified a rule of merger with regard to mortgages. Colo.Rev.Stat. § 38-38-109 (1982) provides:

> If the holder of such mortgage acquires the title conveyed by virtue of such foreclosure, the title evidenced by the mortgage shall nevertheless continue to secure the lien for the remaining obligation and shall not merge with the title acquired by such foreclosure.

lien. The Government draws this interpretation from the statutory language which states that the party who acquires the property in such a sale takes the property "subject to" the federal tax liens. *See* I.R.C. § 7425(b).

Section 7425 provides in relevant part:

[A] sale of property on which the United States has or claims a lien ...

(1) shall, except as otherwise provided, *be made subject to and without disturbing such lien or title,* if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1); or

(2) shall have the same effect with respect to the discharge or divestment of such lien or such title of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated, if—

(A) notice of such lien or such title was not filed or recorded in the place provided by law for such filing more than 30 days before such sale,

(B) the law makes no provision for such filing, or

(C) notice of such sale is given in the manner prescribed in subsection (c)(1).

*Id.* (emphasis added). Subsection (c)(1) requires the senior lienholder to provide written notice of a sale of collateral to the government "not less than 25 days prior to such sale." *Id.* § 7425(c)(1).

The practical effect of this statute may be summarized as follows. The statute creates two duties to give notice—one on behalf of the government, and one on behalf of the senior lienholder who desires to sell collateral. The government must give a senior lienholder notice of its junior federal tax lien at least thirty days prior to the time that the senior lienholder sells collateral. If the government fails to file such

notice, the sale of the collateral extinguishes the government's lien on that property, and the purchaser takes free of the junior federal lien. By timely filing notice of its tax lien, however, the government triggers the requirement that the senior lienholder give notice to the government at least twenty-five days prior to selling the collateral.

If the senior lienholder gives timely notice of the sale to the government, the government's junior liens on collateral are extinguished by the sale to the extent provided by local law. Thus, the purchaser generally will take the property free of all such liens. If, however, the senior lienholder fails to give notice of the sale to the government, the government's junior lien is preserved and the purchaser of collateral takes property "subject to" the government's lien.

The legislative history of section 7425 shows that Congress was responding to the problems caused by the practice of foreclosing a senior security interest without notifying the government. S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 3722, 3748. Foreclosure without notice had the effect of extinguishing the junior lien of the United States "under circumstances where it is not possible for the Internal Revenue Service to take steps to protect the United States in the collection of its tax revenues." *Id.* By adding the notice requirement, the government was given "an opportunity to review its position and determine the appropriate action without placing an undue burden on a foreclosing creditor." *Id.*

■ Neither the language nor the purpose of section 7425 supports the Government's claim that failure to comply with the notice provisions automatically elevates junior tax liens to priority status. By making property sold without notice "subject to" the lien of the United States, section 7425 merely preserves federal tax liens from being extinguished through sale of the underlying collateral; it does not other-

wise alter the federal priority rules of I.R.C. §§ 6321–6323.

Under the federal law of priority, the State's tax liens are senior to the federal tax liens. The district court therefore correctly granted summary judgment in favor of the State and ordered that the State had priority to satisfy its lien from the proceeds that resulted from the State's sale of the property to a third party.

We recognize that federal tax liens are important tools used to protect the "vital national interest" in collecting federal taxes. *Southern Bank*, 770 F.2d at 1009. We further agree with the Eleventh Circuit that

> [b]ecause of this important interest, we cannot permit states to nullify the effectiveness of the federal tax lien by enacting nonjudicial foreclosure laws or by applying various equitable principles recognized by the state. The legislative history of 26 U.S.C. § 7425 makes clear that Congress did not intend such a result.

*Id.* By applying the state law of merger, which here permitted an exception when the purchaser did not intend merger, we have neither nullified the effectiveness of federal tax liens nor allowed the states to alter the federal law of priority among competing liens. Rather than creating an exception to section 7425, as the Government argues, the result in this case is entirely consistent with the statute. The federal tax lien is preserved, and the priority among competing lienholders is decided on the basis of the federal law of priority.

The judgment of the district court is therefore AFFIRMED.