Terryl A. GARDNER, Plaintiff–Appellee,

v.

UNITED STATES of America,
Defendant–Appellant.

No. 93–3243.

United States Court of Appeals,
Tenth Circuit.

Sept. 8, 1994.

Regina S. Moriarty, Tax Div., Dept. of Justice, Washington, DC (Michael L. Paup, Acting Asst. Atty. Gen., William S. Estabrook, Tax Div., Dept. of Justice, Washington, DC, with her on the brief) (Randall K. Rathbun, U.S. Atty., of counsel), for defendant-appellant.

Christopher A. McElgunn, of Klenda, Mitchell, Austerman & Zuercher, Wichita, KS (J. Michael Morris, with him on the brief), for plaintiff-appellee.

Before SEYMOUR, Chief Judge, HENRY, Circuit Judge, and DAUGHERTY, Sr. District Judge.*

HENRY, Circuit Judge.

The Internal Revenue Service (IRS) appeals the district court order granting summary judgment in a quiet title action in favor of the plaintiff-appellee, Ms. Terryl A. Gardner. The United States District Court for the District of Kansas held that the marital property awarded to Ms. Gardner in a divorce proceeding is not subject to a tax lien held by the government for taxes assessed against the plaintiff's former husband, Billie L. Gardner. The IRS argues that Mr. Gardner had "property" or "rights to property," within the meaning of 26 U.S.C. § 6321, and therefore that he had a sufficient ownership interest when the taxes were assessed against him for a federal tax lien to attach to the property in question. For the reasons stated below, we disagree, and accordingly affirm the district court's order.

I. BACKGROUND

The facts of this case are not in dispute. On January 22, 1985, Ms. Gardner commenced a divorce action in the Kansas Dis-

* The Honorable Frederick A. Daugherty, Senior United States District Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

trict Court. On August 1, 1986, prior to entry of a divorce decree, the IRS assessed previously unpaid income taxes against Mr. Gardner and filed a Notice of Federal Tax Lien three days later.[1] Subsequently, Mr. Gardner filed a Chapter 7 bankruptcy petition. The bankruptcy court allowed the divorce action to continue by lifting the automatic stay,[2] and on January 12, 1987, the Kansas District Court entered the divorce decree, awarding a substantial amount of the property to Ms. Gardner.[3]

Ms. Gardner later filed suit in bankruptcy court against the bankruptcy trustee and the United States, seeking to obtain the property that had been awarded to her in the divorce action. The bankruptcy court awarded the property to Ms. Gardner, holding that under Kansas law, any interest in the property that the government might have held was divested by entry of the divorce decree. The district court affirmed the bankruptcy court's decision, but we reversed, holding that the bankruptcy court lacked jurisdiction over a conflict between two creditors when the property was no longer part of the bankruptcy estate. *In re Gardner*, 913 F.2d 1515 (10th Cir.1990) (per curiam). However, we specifically declined to reach the issue of whether the property was subject to a federal tax lien, remanding the case for dismissal because the bankruptcy court lacked jurisdiction.

On December 7, 1990, Ms. Gardner filed the present complaint in the district court to quiet title to the marital property under 28 U.S.C. § 2410. In response, the IRS argued that a federal tax lien had attached to Mr. Gardner's property interests on the date of assessment and that this lien took priority over Ms. Gardner's interest in the property, which the government characterized as merely inchoate. The case was submitted to the district court for a decision on the basis of the parties' stipulations, and both parties filed motions for summary judgment. The district court held that Ms. Gardner was entitled to summary judgment because she came into ownership of the property when the divorce petition was filed. Mr. Gardner, therefore, had no interest in the property to which the tax lien could attach.[4]

## II. DISCUSSION

We review a grant of summary judgment de novo, applying the same legal standard used by the district court. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). "Summary judgment is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Russillo v. Scarborough*, 935 F.2d 1167, 1170 (10th Cir.1991); see Fed.R.Civ.P. 56(c). The facts are not in dispute in this case and the matter at issue is purely a question of Kansas state law. Interpretation of state law by district courts is subject to de novo review. *Salve Regina*

1. Although the lien was originally filed against both Mr. and Ms. Gardner, the IRS subsequently released the lien against Ms. Gardner.

2. Under 11 U.S.C. § 362(a) (1988), the filing of a bankruptcy petition creates an automatic stay, which serves to arrest, inter alia, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(3).

3. By the time the divorce decree was entered, it had become apparent that Mr. Gardner had secreted away substantial portions of the property in specific violation of the Kansas District Court's order. Appellant's App. at 80–82. Shortly thereafter, Mr. Gardner disappeared. *Id.* at 39.

4. Also at issue in this litigation were the rights of a second defendant, the First National Bank of Anthony. The Bank claimed that it had a security interest and right of set off in certain of Mr. Gardner's accounts and that these rights took priority over any interests asserted by Ms. Gardner and the United States. The district court held that it did not have the necessary factual information in front of it to determine the rights of the parties with respect to the accounts and declined to rule on the Bank's rights at that time. In a subsequent proceeding, the court held that Ms. Gardner "had prior rights to the proceeds in the trust account," and that the Bank was also prohibited from exercising any setoff rights "because the bank took no steps to do so until after the divorce decree was entered and plaintiff was awarded the trust account." *Gardner v. United States*, No. 90–1570–FGT, 1993 WL 256722 (D.Kan. June 9, 1993). The Bank's rights are not at issue in this appeal.

*College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1990).

### A. Federal Tax Liens

■ Section 6321 of the Internal Revenue Code provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. Under 26 U.S.C. § 6322, this lien arises at the time of assessment.

A lien arising under Section 6321 cannot, however, extend beyond the property interests held by the taxpayer. *United States v. Rodgers,* 461 U.S. 677, 690–91, 103 S.Ct. 2132, 2140–41, 76 L.Ed.2d 236 (1982). Consequently, a federal tax lien attaches only to the property interests of the delinquent taxpayer at the time of assessment. *United States v. Wingfield,* 822 F.2d 1466, 1472 (10th Cir.1987).

■ Additionally, although federal law delineates the standard for determining when a federal tax lien attaches,

> The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpay-

er had in the property ... sought to be reached by the statute."

*Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960) (quoting *Morgan v. Commissioner,* 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940)) (alteration in original); *see also United States v. Colorado,* 872 F.2d 338, 339–40 (10th Cir.1989). Therefore, in order to determine the rights of Ms. Gardner and the United States in this case, we must first examine whether Mr. Gardner had "property" or "rights to property" under Kansas state law on the date the taxes were assessed against him. It is only after a taxpayer's legal interest in the property is so determined that federal law dictates the tax consequences. *United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985).

### B. Kansas Property Law

In *Cady v. Cady,* 224 Kan. 339, 581 P.2d 358 (1978), the Kansas Supreme Court considered the effect that filing a petition for divorce has on the property interests of the parties. Prior to filing a divorce petition "a spouse possesses only an inchoate interest in real estate held by the other spouse." *Id.* at 362 (citing *McGill v. Kuhn,* 186 Kan. 99, 348 P.2d 811 (1960)). "The filing for divorce, however, has a substantial effect upon the property rights of the spouses. At that moment *each spouse becomes the owner of a vested, but undetermined, interest in all the property* individually or jointly held." *Id.* at 362–63 (emphasis added). The *Cady* court therefore held "that the filing of a petition for divorce ... creates a species of common or co-ownership in one spouse in the jointly acquired property held by the other." *Id.* at 363. The extent of that interest is to be subsequently determined by the state trial court when dividing the property under the divorce decree pursuant to Kan.Stat.Ann. § 60–1610(b) (Supp.1993). *Id.*[5]

---

5. When the Kansas Supreme Court decided *Cady,* the Kansas Legislature had recently enacted a new statute, which appears to have some bearing on this issue. *See* Kan.Stat.Ann. § 23–201(b). The statute reads in pertinent part:

All property owned by married persons, ... whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce.... Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60–1610 and amendments thereto.

Ultimately, the *Cady* court held that such a property interest is sufficient to defeat a claim by the IRS that division of property pursuant to a divorce decree constitutes a taxable transfer of property. *Id.* at 360, 363. Instead, the court characterized it as a division of property between two co-owners, which is not a taxable transfer because the parties had an interest in the property prior to the division between them.

Nearly ten years later, the Kansas Supreme Court revisited the issue. In *Smith v. AIFAM Enters.*, 241 Kan. 249, 737 P.2d 469 (1987), the court held that the filing of a petition of divorce creates a vested property interest in both spouses such that the property is not subject to a judgment creditor's lien or execution obtained against one of the spouses while the divorce action is pending. *Id.*, 737 P.2d at 474. The court reasoned that allowing the judgment creditor to prevail on the basis of a lien arising after the divorce petition was filed would "interfere with the ability of the trial court to divide the property on a fair and equitable basis" as mandated by Section 60–1610(b). *Id.*

### C. Application to the Instant Case

■ Through its decision in *Cady*, the Kansas Supreme Court has recognized a policy interest in granting the trial court adequate leeway to divide the marital property on a "just and reasonable" basis under Section 60–1610(b). The Kansas courts address this interest by treating the property inter-

ests created by the divorce decree as having vested on the date the divorce petition was filed. Thus, the spouse is deemed to have an interest in the property on the date of filing, even though the extent of that interest is undetermined prior to entry of the divorce decree.

In this case, both Mr. and Ms. Gardner had a vested interest in the marital property when the IRS assessed the taxes against Mr. Gardner. However, the extent of those interests had yet to be determined by the Kansas District Court. We now know, due to the divorce decree entered by the Kansas court, that Ms. Gardner's interest extended to almost all of the property on the assessment date, and Mr. Gardner's interest extended to practically none of the property.

It has been aptly noted that "the Government's rights can rise no higher than those of the taxpayer to whom the property belongs. . . . Moreover, the tax collector not only steps into the taxpayer's shoes but must go barefoot if the shoes wear out." 4 B. Bittker, *Federal Taxation of Income, Estates, and Gifts* ¶ 111.5.4, at 111–12 (1981); *see also Rodgers*, 461 U.S. at 690–91, 103 S.Ct. at 2140–41 (A federal tax lien under Section 6321 "cannot extend beyond the property interests held by the delinquent taxpayer."). Because of the divorce decree, Mr. Gardner had no rights to the property in question when the IRS made its assessment against him, no tax lien could attach, and Ms.

*Id.* However, the *Cady* court articulated this same rule, without placing any reliance on Section 23–201. The court specifically declined to address the impact of the statute on the parties' property rights because the statute was not in effect at the time of the parties' divorce and because the court "d[id] not accept defendant's argument that the enactment of this statute created a presumption [that] the legislature was attempting to change pre-existing law." *Cady*, 581 P.2d at 363.

More recently, the Kansas Supreme Court again refused to rest its analysis on Section 23–201(b). *See Smith v. AIFAM Enters.*, 241 Kan. 249, 737 P.2d 469, 472, 474 (1987). In discussing the statute, the *Smith* court cited a Kansas Court of Appeals decision holding that the legislative purpose of Section 23–201(b) was to clarify that a transfer of marital property upon divorce is a transfer between co-owners and was not intended to alter prior law. *See Wachholz v.*

*Wachholz*, 4 Kan.App.2d 161, 603 P.2d 647, 650 (1979). The Kansas Supreme Court went on to state: "*Cady* was expressly decided without relying on 23–201(b), instead relying on prior Kansas law and the principles underlying [Section 60–1610(b)]. The argument that 23–201(b) changed Kansas law was rejected by this court." *Smith*, 737 P.2d at 472. The *Smith* court then went on to decide the case without further reference to Section 23–201(b).

Although this Section does appear to provide guidance in determining the character of the property interests held by the parties to a divorce proceeding, the Kansas courts have apparently reached the same determination without reference to the statute. Consequently, we reach our decision today on the basis of Kansas common law as articulated in the *Cady* decision. Although we do not address the implications of Section 23–201(b), we believe the same outcome would be reached under either approach.

Gardner owns that property free of any such lien.

The government attempts to avoid this conclusion by advancing a number of arguments, none of which we find persuasive. First, the government contends that the fact that the divorce decree was written in terms of a "judgment" against Mr. Gardner,[6] suggests that he maintained an ownership interest in the property up to the time the decree was entered, and therefore that a tax lien did attach to the property. We disagree. Although the divorce decree is framed in terms of a "judgment," we cannot ignore the fact that the Kansas court merely *divided* marital property pursuant to its duty to do so in a "just and reasonable" manner under Kan. Stat.Ann. § 60–1610(b). Under *Cady*, this division of property serves to determine the extent of the parties' interests in the marital property, which had previously vested when the divorce petition was filed. Because the property interests vested at the time the petition was filed, this subsequent determination of the extent of those interests does not indicate that Mr. Gardner held any lingering interests in the property at issue.

The government also argues that the doctrine of relation back may not serve to extinguish a federal tax lien. In making this argument, the government relies on United States Supreme Court precedent holding that a judgment lien may not relate back to the date of attachment, thereby gaining priority over an intervening lien. *See United States v. Security Trust & Savings Bank*, 340 U.S. 47, 50, 71 S.Ct. 111, 113, 95 L.Ed. 53 (1950). However, the government's reliance on this precedent is misplaced. As we have already noted, Ms. Gardner's interest in the property in this case is not that of a judgment creditor who holds a lien. Instead, Ms.

Gardner had a vested ownership interest in the property prior to any attempt by the IRS to create a tax lien. Because the government simply has no rights to property beyond the interests held by the delinquent taxpayer, no tax lien ever attached to the property that was awarded to Ms. Gardner.

For the same reasons, the government's argument that this case raises an issue of priority between the parties must also fail. Because the property interests were already vested in Ms. Gardner when the tax lien was filed, the government simply has no rights to Ms. Gardner's property.

Finally, during oral argument the government urged that the outcome we reach today might encourage spouses to conspire to engage in tax evasion. In the unlikely event that spouses may seek to avoid a tax lien through a divorce action, it could, of course, be set aside for fraud—just as any other fraudulent conveyance may be redressed. *See, e.g.,* Unif.Fraudulent Conveyance Act § 7, 7A U.L.A. 509 (1918) ("Every conveyance made and every obligation incurred with actual intent ... to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.").[7]

Affirmed.

---

6. Specifically, the Kansas court stated:
   [T]he court considers it necessary to make a just and reasonable division of property and petitioner is entitled to judgment against respondent for property division in the amount of one million dollars.
   ... In satisfaction of that judgment, the petitioner is entitled to ... specific personal and real property free and clear of all liens."
   Appellant's App. at 83. The court went on to list the property awarded to Ms. Gardner.

7. A sense of fairness compels us to answer the IRS's final closing argument, where it suggests a "split the baby" approach. Under this theory, the government seems to urge that because Mr. Gardner in effect cheated both his wife and his Uncle Sam, *see supra* note 3, Ms. Gardner should give half of her property to the government. We reject this approach, respecting its scriptural overtones, as Kansas law clearly resolves this dispute in favor of Ms. Gardner, as we have stated. We also note that precedent suggests that one who makes this argument should lose. *See* 1 *Kings* 3:16–28.