FILED
United States Court of Appeals
Tenth Circuit

May 30, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CUBA SOIL AND WATER
CONSERVATION DISTRICT;
LEA SOIL AND WATER
CONSERVATION DISTRICT,

     Plaintiffs-Appellants,

v.

JAMES LEWIS, New Mexico
State Treasurer; STATE OF
NEW MEXICO,

     Defendants-Appellees.

No. 07-2218

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 1:06-CV-01251-JH/RHS)**

---

Daniel Israel (David Thuma and Robert H. Jacobvitz of Jacobvitz, Thuma, and Walker, Albuquerque, New Mexico, with him on the brief), Boulder, Colorado, for Plaintiffs-Appellants.

Eric R. Miller, Assistant Attorney General (Gary K. King, Attorney General, and David K. Thompson, Assistant Attorney General, with him on the brief), Santa Fe, New Mexico, for Defendants-Appellees.

---

Before **HENRY**, Chief Judge, and **BALDOCK** and **TYMKOVICH** Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

    The issue presented in this appeal is one of first impression: Whether the

Federal Mineral Leasing Act of 1920 (FMLA), 30 U.S.C. §§ 181-287, provides political subdivisions of a State an *implied* cause of action to challenge the State's allocation of federal mineral royalties received pursuant to the FMLA. The district court said no and dismissed the complaint. See Fed. R. Civ. P. 12(b)(6). Our review is de novo. See Pace v. Swerdlow, 519 F.3d 1067, 1073 (10th Cir. 2008). We exercise jurisdiction under 28 U.S.C. § 1291, and affirm.

I.

Section 191 of the FMLA, entitled "Disposition of moneys received," directs the Federal Government to return fifty percent of federal mineral royalties generated from the lease of public lands –

> to the State . . . within the boundaries of which the leased lands or deposits are or were located; said moneys paid to any such State[] . . . to be used by such State and its subdivisions, as the legislature of the State may direct giving priority to those subdivisions of the State socially or economically impacted by development of minerals leased under this chapter, for (i) planning, (ii) construction and maintenance of public facilities, and (iii) provision of public services . . . .

30 U.S.C. § 191(a). Section 195 of the FMLA, entitled "Enforcement," makes it unlawful for "any person" to participate in a plan to circumvent the FMLA's provisions. Id. § 195(a)(1). Subsection (c) specifically places responsibility for civil enforcement in the hands of the Attorney General:

> Whenever it shall appear that any person is engaged, or is about to engage, in any act which constitutes or will constitute a violation of subsection (a) of this section, the Attorney General may institute a civil action in the district court of the United States for the judicial district in which the defendant resides or in which the violation occurred or in

2

which the lease or land involved is located, for a temporary restraining order, injunction, civil penalty of not more than $100,000 for each violation, or other appropriate remedy . . . .

Id. § 195(c); see also id § 195(f) (placing concurrent civil enforcement power in the State where appropriate).

Meanwhile, New Mexico law provides that the larger portion of "money received by the State pursuant to the provisions of the [FMLA] shall be distributed to the public school fund." N.M. Stat Ann. § 22-8-34.[1] Plaintiffs Cuba and Lea Soil and Water Conservation Districts contend that the State, in failing to provide them a share of the royalties received pursuant to the FMLA (the State provides them nothing), is violating § 191. Plaintiffs seek to enjoin the State Treasurer "from continuing to violate federal law until appropriate state legislation is enacted . . . in

---

[1] Section 22-8-34, entitled "Federal mineral leasing fund," provides:

A. Except for an annual appropriation to the instructional material fund and to the bureau of geology and mineral resources of the New Mexico institute of mining and technology, and except as provided in Subsection B of this section, all other money received by the state pursuant to the provisions of the federal Mineral Lands Leasing Act, 30 U.S.C. § 181, et seq., shall be distributed to the public school fund.

B. All money received by the state as its share of a prepayment of royalties pursuant to 30 U.S.C. § 1726(b) shall be distributed as follows:

(1) a portion of the receipts, estimated by the taxation and revenue department to be equal to the amount that the state would have received as its share of royalties in the same fiscal year if the prepayment had not been made, shall be distributed to the public school fund; and

(2) the remainder shall be distributed to the common school permanent fund.

3

compliance with the direct mandate of [§ 191] which assures that subdivisions . . . impacted by federal mineral development receive priority in the receipt of federal mineral royalties."[2]  First Amend. Compl. ¶ 2.

## II.

Because only Congress can create a cause of action to enforce federal law, our inquiry necessarily focuses on Congress' intent in enacting § 191 of the FMLA.  See Boswell v. Skywest Airlines, Inc., 361 F.3d 1263, 1267 (10th Cir. 2004).  Our task is to determine whether the FMLA displays an intent to create both a right and a remedy in favor of Plaintiffs.  See Alexander v. Sandoval, 532 U.S. 275, 286 (2001).  We begin by examining the statute for "'rights-creating language,'" which confers a right directly on an identified class that includes Plaintiffs.  Boswell, 361 F.3d at 1267 (quoting Sandoval, 532 U.S. at 288).  We also consider the relationship between the statute at issue and the statutory scheme in which it is encompassed.  See Boswell, 361 F.3d at 1267.

The mere fact that an enactment is designed to provide a benefit to a particular group, what some may call a right, is not dispositive; we must also ask whether the statutory scheme provides members of that group with a means to enforce it through

---

[2] In addition to their claim for prospective relief, Plaintiffs originally claimed a right to payment of past royalties.  The Eleventh Amendment, however, clearly bars any claim for the retroactive payment of royalties the State has received pursuant to the FMLA.  See Edelman v. Jordan, 415 U.S. 651, 663-671 (1974) (holding the Eleventh Amendment barred that portion of a district court order directing retroactive payment of aid benefits from the Illinois treasury).

4

litigation, what some may call a remedy. See Universities Res. Assn. v. Coutu, 450 U.S. 754, 771 (1981). Where Congress has expressly provided for enforcement of a statute by a particular means, we are hesitant to look beyond that means because "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Sandoval, 532 U.S. at 290.

Absent Congressional intent to create both a right and a remedy in favor of a plaintiff, a cause of action does not exist. See id. at 286. And we are not authorized to create a cause of action, "no matter how desirable that might be as a policy matter or how compatible with the statute." Id.; see also Boswell, 361 F.3d at 1269 (explaining that in determining whether Congress intended to create an implied cause of action, focusing on the broad remedial purpose of the statute, to the exclusion of its text and place in the legislative scheme, is unwarranted).

Accepting as true, as we must, the complaint's factual allegation that federal mineral development impacts Plaintiffs, we may assume without deciding that Plaintiffs fall within the group – political subdivisions of a State "socially or economically impacted" by federal mineral development – that § 191 is intended to benefit. The provision of the statute which provides the State may use monies received pursuant to the FMLA "as the legislature of the State may direct," cannot be viewed apart from the qualifier "*giving priority* to those subdivisions of the State socially or economically impacted by development of minerals leased." 30 U.S.C. § 191 (emphasis added). But the question is not simply what group stands to benefit

from the statute; the question is whether Congress intended to confer a cause of action upon that group's members. See California v. Sierra Club, 451 U.S. 287, 294 (1981).[3]

Without any clear indication that Congress intended to confer a cause of action upon Plaintiffs, we are loathe, based upon the imprecise standard of "giving priority," to tell the State how best to appropriate FMLA monies. Cf. Gonzaga Univ. v. Doe, 536 U.S. 273, 280 (2002) (explaining that "unless Congress speaks with a clear voice, and manifests an unambiguous intent to confer individual rights, federal funding provisions provide no basis for private enforcement" (internal brackets and quotations omitted)). The right which Plaintiffs assert and which § 191 purportedly protects is so indeterminate that any effort to enforce it by essentially telling the State legislature to "pass a statute" – Plaintiff's requested remedy – would strain judicial competence and represent an unwarranted intrusion upon State sovereignty in tension with the Tenth Amendment. Cf. New York v. United States, 505 U.S. 144, 162 (1992) (holding Congress may not commandeer the state legislative process by requiring a state legislature to enact a particular kind of law). An array of legislative decisions might constitute "giving priority" to the legions of political subdivisions

---

[3] In previously holding that FMLA regulations did not create an implied right of action in favor of an aggrieved individual against mineral lessees for monetary and injunctive relief, we explained that "a mere proscription of behavior" does not alone warrant an inference that Congress intended to create an implied cause of action. Pullman v. Chorney, 712 F.2d 447, 449 (10th Cir. 1983).

affected by federal mineral development. In other words, § 191 provides no manageable substantive standards for us to apply in determining what portion of the lease royalties properly belong to Plaintiffs. Congress must speak much more clearly if it intends for us to navigate the path Plaintiffs suggest we follow.

That Congress enacted a scheme, namely § 195, to remedy FMLA violations reinforces our conclusion that Congress did not intend to create the cause of action Plaintiffs' assert. See Boswell, 361 F.3d at 1269 (recognizing "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others" (internal quotations omitted)). "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." Transamerica Mtg. Advisors, Inc. v. Lewis, 444 U.S. 11, 19 (1979). Accordingly, where Congress has created a "detailed" remedial scheme for the enforcement of a particular federal right, the Supreme Court has refused, in suits against government officers, to supplement that scheme under the exception to the Eleventh Amendment established in Ex Parte Young, 209 U.S. 123 (1908). See Seminole Tribe v. Florida, 517 U.S. 44, 74 (1996). Whether we view the issue from the perspective of the dubious existence of a cause of action in favor of Plaintiffs or the prohibition on suits against the State of New Mexico and its officials, the same principles apply here. Both inquiries turn upon congressional intent. See id. at 73-76 & n.17.

We need not decide the precise scope of § 195 to resolve this appeal. Suffice

it to say "[w]e are simply not authorized to compare the remedies specifically provided by Congress with an . . . [implied] right of action and to then impose the latter remedy if we deem it a better means of enforcing the statute." Boswell, 361 F.3d at 1270. At this point, Plaintiffs' remedy lies in the political process rather than the judicial arena. Because nothing in the FMLA suggests Congress intended to create an implied cause of action under § 191 of the FMLA in favor of Plaintiffs, the judgment of the district court is –

AFFIRMED.