**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 19, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TIMOTHY J. RUSSELL; ANITA L.
RUSSELL,

      Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA,

      Defendant-Appellant,

and

HOLLY WILLIAMS, Public Trustee
of El Paso County,

      Defendant.

No. 07-1438

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:07-CV-00456-RPM)**

---

Philip J. Giacinti, Jr., of Procopio, Cory, Hargreaves and Savitch LLP, Denver,
Colorado, for Plaintiffs-Appellees.

Patrick J. Urda (Nathan J. Hochman, Assistant Attorney General, Bruce R.
Ellisen, Attorney, and Troy A. Eid, of Counsel, with him on the briefs), U.S.
Department of Justice, Washington, D.C., for Defendant-Appellant.

---

Before **MURPHY, BRORBY** and **HARTZ**, Circuit Judges.

**BRORBY**, Circuit Judge.

Appellant United States (hereafter "government") appeals the district court's judgment in favor of Timothy and Anita Russell (the Russells) in their federal action to quiet title in their real property on which the government holds a recorded federal tax lien. The government contends the district court erred in relying on Colorado law in granting the Russells judgment because a provision of the Internal Revenue Code, 26 U.S.C. § 7425(b), preempts state law and leaves federal tax liens undisturbed where the government did not receive notice of a nonjudicial sale. We exercise our jurisdiction under 28 U.S.C. § 1291 and reverse and remand with instructions for the district court to vacate its prior judgment and enter judgment in favor of the government on its motion to dismiss the complaint.

## I. Factual and Procedural Background

During the underlying action, the parties agreed to the following undisputed pertinent facts. In August 2003, Ashcroft Homes, Inc. (Ashcroft) obtained a construction loan in the amount of $506,400 from U.S. Bank in exchange for a deed of trust to the property in question. Almost a year later, in July 2004, the Internal Revenue Service (IRS) filed a notice of a federal tax lien against Ashcroft on the property in the amount of $160,353.09, and on July 23, 2004, the

Clerk and Recorder of El Paso County, Colorado, recorded the lien. On October 24, 2004, U.S. Bank assigned the deed of trust to Timber Creek Holdings, L.P. (Timber Creek).

In February 2005, after Ashcroft defaulted on its loan, Timber Creek commenced foreclosure proceedings. On April 13, 2005, the Public Trustee of El Paso County conducted a foreclosure sale at which Timber Creek purchased the property for $630,987.94. However, the government was not provided notice of the foreclosure sale. In November 2005, Timber Creek sold the property to the Russells.

On March 7, 2007, the Russells filed a complaint against the United States seeking to quiet title to their property under Colo. Rev. Stat. § 38-38-506(2)(a). The government moved to dismiss the complaint in conjunction with 26 U.S.C. § 7425(b)(1), contending it preempted Colorado law and required the lien remain undisturbed unless it received notice of the sale, which it did not.

At a hearing held on the government's motion to dismiss, the district court heard argument from both parties, determined no factual disputes existed, and granted judgment in favor of the Russells, relying on Colo. Rev. Stat. § 38-38-506(2) and 26 U.S.C. 7425(d), a redemption provision, in holding the government

must redeem or purchase the property for $710,959.42 within 120 days or forfeit its lien, making title to the property "free and clear of any claim of lien" by the government. This appeal followed.

## II. Discussion

On appeal, the government poses the same argument it made before the district court, contending the Colorado statute on which the district court relied conflicts with and is preempted by provisions of the Internal Revenue Code governing the validity of federal tax liens after a nonjudicial sale. In making this argument, it points out that a government lien generally attaches to the delinquent taxpayer's property and rights to that property, and the lien remains attached even if the property is transferred to a third party. In a case, like here, where a nonjudicial sale occurs on property in which the government holds a tax lien, it argues these general principles continue to apply through 26 U.S.C. § 7425(b), which requires, as intended by Congress, for the lien to remain undisturbed if the Secretary of Treasury did not receive notice of the sale at least twenty-five days prior to the sale and the government properly recorded notice of the lien at least thirty days before the sale. The government points out this remedy allows it to enforce its junior lien against the property through administrative or judicial proceedings, which is incompatible with the remedy in Colo. Rev. Stat. § 38-38-506, which provides the interest of a lien holder who did not receive notice of

-4-

nonjudicial sale must be terminated if the lien holder is given the opportunity to exercise rights to cure and redeem the property and fails to do so. It also argues subsection (d) of 26 U.S.C. § 7425, allowing the government to redeem property, merely gives the United States a permissive right to redeem property referenced in § 7425(b) within 120 days and is only one of several options the government may pursue to enforce its lien.[1]

In response, the Russells argue in favor of the district court's application of Colo. Rev. Stat. § 38-38-506(2)(a). They contend 26 U.S.C. § 7425(b) does not contain language expressly or impliedly preempting state law and that this circuit's existing case law establishes Colo. Rev. Stat. § 38-38-506 does not contravene 26 U.S.C. § 7425(b). In addition, they point out that subsection (d) of 26 U.S.C. § 7425, like § 38-38-506, also prescribes redemption as a remedy so that the state and federal remedies are similar and not in conflict. They further argue the purpose of the Federal Tax Lien Act of 1966[2] is not served by the

---

[1] The government also suggests the Russells' only remedy for removing the lien is outlined in 26 U.S.C. § 6325(b)(4)(A), which requires them to either deposit cash or a bond in the amount the government determines to be the value of its lien interest, after which they have 120 days to file an action challenging the value of the lien and possibly obtaining a refund of any amount exceeding the value determined by the court. Any issue of other relief available to the Russells is not before us on appeal for disposition, and therefore, we do not address it.

[2] Pub. L. No. 89-719, 80 Stat. 1125 (as codified in 26 U.S.C. §§ 3505, 7425-26, 7810) (1966).

government's argument because 26 U.S.C. § 6323(a) and (f) make federal lien priorities subject to a state's priority scheme, and 28 U.S.C. § 2410(a) and (d)[3] reference both state court jurisdiction and laws of the situs state, illustrating state, rather than federal, law should be applied.

We begin with our standard of review for a motion to dismiss, which is the procedural vehicle on which the government sought resolution and the district court disposed of the case. "Because the sufficiency of a complaint is a question of law, we review de novo the district court's grant of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), applying the same standards as the district court." *Sunrise Valley, LLC v. Kempthorne*, 528 F.3d 1251, 1254 (10th Cir. 2008) (internal quotation marks and citation omitted), *petition for cert. filed*, 77 USLW 3267 (Oct. 20, 2008) (No. 08-537). "Those standards require that we must accept as true all well-pleaded facts, and construe all reasonable allegations in the light most favorable to the plaintiff." *Id.* Dismissal is appropriate for "failure to state a claim upon which relief can be granted," Fed. R. Civ. Proc. 12(b)(6), which, in rare instances, may occur on the "basis of a

---

[3] While the Russells cite subsection (d), it does not contain any reference to the local laws of the situs state. *See* 28 U.S.C. § 2410(d). Instead, we assume they are referring to subsection (c), which references "the local law of the place where the court is situated" in generally discussing judgments or decrees discharging property from liens held by the United States. *See* 28 U.S.C. § 2410(c).

dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989); *see also Gregory v. United States*, 942 F.2d 1498, 1500 (10th Cir. 1991).

We next turn to the issue of preemption, on which the government brought its motion to dismiss and its appeal. A fundamental principle in the Constitution under the Supremacy Clause "is that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). The preemptive effect of federal law may be apparent from the express terms of the statute, or it may be implicit. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983). Implicit preemption of state law may occur in at least two circumstances, when: (1) Congress intends federal law to "occupy the field," or (2) state law is naturally preempted to the extent it conflicts with a federal statute. *See Crosby*, 530 U.S. at 372. Such conflict occurs when "compliance with both federal and state regulations is a physical impossibility" or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pacific Gas*, 461 U.S. at 204 (internal quotation marks and citations omitted).

In determining whether a statute expressly or implicitly preempts state law, we look to the principles of statutory construction. "We review a district court's statutory interpretation de novo," and "[i]t is our primary task in interpreting

-7-

statutes to determine congressional intent, using traditional tools of statutory construction." *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008) (internal quotation marks and citations omitted), *petition for cert. filed* (Oct. 20, 2008) (No. 08-6852). In ascertaining such congressional intent, "[w]e begin by examining the statute's plain language," and "[i]f the statutory language is clear, our analysis ordinarily ends." *Id.* Moreover, "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Cuba Soil & Water Conservation Dist. v. Lewis*, 527 F.3d 1061, 1065 (10th Cir. 2008) (internal quotation marks and citation omitted), *petition for cert. filed*, 77 USLW 3252 (Oct. 13, 2008) (No. 08-499). "If the statute's plain language is ambiguous as to Congressional intent, we look to the legislative history and the underlying public policy of the statute." *Manning*, 526 F.3d at 614 (internal quotation marks and citation omitted).

With these principles in mind, we turn to the statutes at issue in this appeal. Under Colorado law, when a person or entity with a recorded interest, such as a lien holder, is not named as a party defendant in the foreclosure action or properly notified of the foreclosure sale, that person or entity is considered an "omitted party." *See* Colo. Rev. Stat. § 38-38-506(1). Generally, an omitted lien holder's interest in the foreclosed property may be terminated if, in a civil action

commenced by an interested person, the omitted lien holder is afforded rights of cure and redemption. *See* Colo. Rev. Stat. § 38-38-506(2). The omitted lien holder has a right to redeem the property within a specified time, and if no redemption occurs within that time frame, title of the property sold "shall vest" in the holder of the certificate of purchase or redemption. *See* Colo. Rev. Stat. § 38-38-501.

In determining whether federal law preempts such state law, we turn to the federal statute at issue, the legislative history of 26 U.S.C. § 7425(b), and case law applicable to government tax liens. As the government contends, a properly filed government tax lien generally attaches to a delinquent taxpayer's property and rights to that property and remains attached, even if the property is transferred to a third party, until the lien is satisfied or becomes unenforceable by reason of lapse of time. *See* 26 U.S.C. §§ 6321 and 6322; *United States v. Cache Valley Bank*, 866 F.2d 1242, 1244 (10th Cir. 1989). The transfer of the attached property "does not affect the lien because no matter into whose hands the property goes, the property passes *cum onere*, or with the lien attached." *Cache Valley*, 866 F.2d at 1244-45. When the property on which the United States has or claims a tax lien is involved in a nonjudicial sale, we have looked beyond these general principles specifically to 26 U.S.C. § 7425(b). *See Sec. Pac. Mortgage v. Choate*, 897 F.2d 1057, 1058 (10th Cir. 1990). Section 7425(b) provides, in part,

that such property:

> shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale ....

26 U.S.C. § 7425(b)(1). Another subsection of § 7425 requires notice of the sale of such property must be provided to the Secretary of Treasury "in writing ... not less than 25 days prior to such sale." 26 U.S.C. § 7425(c)(1). Thus, a fair reading of § 7425(b) and (c) establishes a federal tax lien continues to attach to property, even in the event of a nonjudicial sale, so long as the United States recorded a notice of lien at least thirty days before the sale and it did not receive notice of such sale at least twenty-five days in advance.

Nevertheless, the Russells contend § 7425 does not expressly or implicitly provide for preemption of state law. We disagree. In previously addressing the issue of property sold in a nonjudicial sale without notice to the government as a tax lien holder, we held "Section 7425(b) of the Internal Revenue Code dictates the method for discharging a tax lien when the underlying property is sold." *Security Pacific*, 897 F.2d at 1058; *see also Orme v. United States*, 269 F.3d 991, 994 (9th Cir. 2001) (holding § 7425(b) governs nonjudicial sales of property on which the government claims a federal tax lien). In considering the language of the statute, we held that "when proper notice is not given to the IRS and the

-10-

government has complied with the filing requirements of § 7425(c), the sale of the property is made subject to and without disturbing the tax lien or title." *Security Pacific*, 897 F.2d at 1058 (internal quotation marks and citation omitted). Stated another way, in *United States v. Colorado*, 872 F.2d 338, 341 (10th Cir. 1989), we determined that if "the senior lienholder fails to give notice of the sale to the government, the government's junior lien is preserved and the purchaser of collateral takes [the] property 'subject to' the government's lien." In contrast, if proper notice is given to the government, we have held "local law will determine the discharge or divestment of the tax lien." *Security Pacific*, 897 F.2d at 1058.

In addressing this issue in conjunction with another issue on the priority status of a government lien, we found it necessary to look at the legislative history of § 7425 and concluded Congress enacted § 7425(b) because it recognized "[f]oreclosure without notice had the effect of extinguishing" the government's lien "under circumstances where it [was] not possible for the [government] to take steps to protect the United States in the collection of its tax revenues." *United States v. Colorado*, 872 F.2d at 341 (quoting S. Rep. No. 89-1708 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3722, 3748). To the extent § 7425 is ambiguous as to Congress's intent to preserve the government's tax lien when it fails to receive proper notice, the legislative history of § 7425 states:

> Where foreclosures covered by this provision are made without

proper notice to the Government, the bill provides that this does not affect the Government's claim under a tax lien (as where the Government is not joined in a judicial foreclosure). In these cases, the Government's claim continues against the property into the hands of a third party. On the other hand, where notice of the Government's claim under a tax lien is not filed ... or where the Government is notified of the proceeding, a sale has the same effect on the claim as local law provides with respect to similar claims.

S. Rep. No. 89-1708 at 28 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3722, 3749;

H.R. Rep. No. 89-1884 at 26 (1966), *reprinted in* 1966-2 C.B. 815, 833. Thus, it

is clear Congress intended federal law to "occupy the field" in resolving such

federal tax lien issues, resulting in our conclusion § 7425(b) "dictates the method

for discharging a tax lien when the underlying property is sold." *Security Pacific*,

897 F.2d at 1058; *see also Orme*, 269 F.3d at 994 (concluding that in enacting

§ 7425(b), "Congress has spoken clearly on the divestiture of federal tax liens in

sales of property").


Moreover, it is evident Colorado law is naturally preempted where notice is

not given to the government as a lien holder. This is because the remedy in Colo.

Rev. Stat. §§ 38-38-501 and 38-38-506, which requires extinguishment of the

government's lien if it fails to redeem the property, conflicts with the remedy

provided in § 7425(b), which preserves the government's lien.[4] Nevertheless, the

---

[4] While we are not bound by prior district court decisions, we find resolution of a similar issue, in *Bank One v. United States,* helpful in our disposition of this case. In that case, the district court came to the same conclusion regarding § 7425(a)(1) applying to judicial foreclosure sales because it

Russells suggest 26 U.S.C. § 7425(d)(1), like Colo. Rev. Stat. §§ 38-38-501 and 38-38-506, requires the government to redeem the property or forfeit its lien. However, that subsection, entitled "Redemption by United States," simply states:

> (1) Right to redeem.–In the case of a sale of real property to which subsection (b) applies to satisfy a lien prior to that of the United States, the Secretary *may* redeem such property within the period of 120 days from the date of such sale or the period allowable for redemption under local law, whichever is longer.

26 U.S.C. § 7425(d)(1) (emphasis added). Clearly, the language permitting redemption is permissive, and not mandatory, and to interpret it otherwise would run contrary to Congress's intent for the government's tax lien to survive after a sale without notice. Thus, redemption under § 7425(d) is simply one of the options the government may use to enforce a lien. As previously noted, "where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Cuba*, 527 F.3d at 1065. Thus, in conjunction with the applicable federal statute, legislative history, and our case law, it is clear federal, rather than state, law applies under the circumstances presented here because the government did not receive notice after timely filing its lien.

---

also provides the government's federal tax lien will not be disturbed absent statutory notice. *See* 2007 WL 2350101, at \*\*3-5 (D. Colo. Aug. 15, 2007) (unpublished op.) (holding that under 26 U.S.C. § 7425(a)(1) a federal tax lien remains undisturbed without further action by the government and preempts state law because an actual conflict exists between it and Colo. Rev. Stat. § 38-38-506(2) where "[t]here is no viable way to apply both statutes and accomplish the full objective of the federal statute").

Undaunted, the Russells rely on *Security Pacific; United States v. Colorado;* and *Colorado Property Acquisitions, Inc. v. United States*, 894 F.2d 1173 (10th Cir. 1990), in support of their appeal, pointing out that this court ultimately found against the government as the lien holder in those cases. However, in both *Security Pacific* and *United States v. Colorado*, we first determined whether the government's lien was preserved under § 7425(b) before we addressed the remaining issue of whether its junior lien was automatically elevated to priority status over another senior lien holder. To that end, we held § 7425(b) "does not elevate the government's lien but 'merely preserves federal tax liens from being extinguished through sale of the underlying collateral' when property is sold without notice." *Security Pacific*, 897 F.2d at 1058 (quoting *United States v. Colorado*, 872 F.2d at 341). Similarly, in *Colorado Property Acquisitions*, we determined the senior lien holder's lien retained priority over the federal lien on certain property. 894 F.2d at 1176. In this case, no issue was raised as to the junior status of the government's lien, so the disposition of those cases on the lien priority issue is not relevant to resolution of this appeal.

The Russells also argue state law must apply based on both 26 U.S.C. § 6323(a) and (f), which they contend make federal lien priorities subject to a state's priority scheme, and 28 U.S.C. § 2410(a) and (c), which reference both state court jurisdiction and the laws of the situs state. We disagree. Subsections

-14-

(a) and (f) of 26 U.S.C. § 6323 simply require lien notices to be filed in the state in which the property is situated and are not dispositive of the preemption issue presented here. Subsections (a) and (c) of 28 U.S.C. § 2410, regarding state court jurisdiction and application of state law in civil actions affecting property on which the United States has a lien, are general statements of law which do not affect our conclusion that Congress, in enacting § 7425(b), intended federal law to apply when the government fails to receive notice of a nonjudicial sale.

Applying our de novo review, it is evident under the facts presented that the government filed its tax lien at least thirty days before the sale and did not receive notice of the nonjudicial sale at least twenty-five days in advance. As a consequence, federal law is dispositive of the issue, resulting in the government's tax lien remaining undisturbed and the Russells failing to state a cause of action on which relief can be granted.

## III. Conclusion

For these reasons, we **REVERSE** and **REMAND** with instructions for the district court to vacate its decision issued on August 17, 2007, and grant judgment

in favor of the government on its motion to dismiss, in accordance with this decision.